JOY MANUFACTURING CO.,
Appellant,

v.

NATIONAL MINE SERVICE
COMPANY, INC., Appellee.

Appeal No. 86–1029.

United States Court of Appeals,
Federal Circuit.

Jan. 29, 1987.

Newman, Circuit Judge, concurred in part and dissented in part and filed opinion.

Raymond G. Hasley, of Rose, Schmidt, Chapman, Duff & Hasley, Pittsburgh, Pa., argued for appellant. With him on the brief was E. Wallace Breisch, of Pittsburgh, Pa. Of counsel were Edward L. Levine and Raymond W. Augustin, of Joy Mfg. Co., Pittsburgh, Pa.

Stanley J. Price, Jr., of Stanley J. Price, Jr., P.C., Pittsburgh, Pa., argued for appellee.

Before MARKEY, Chief Judge, and NIES and NEWMAN, Circuit Judges.

NIES, Circuit Judge.

Joy Manufacturing Co. appeals from the final order of the United States District Court for the Western District of Pennsylvania, Civil Action No. 80–461, denying Joy's motion to enjoin National Mine Service Company, Inc. from allegedly violating the terms of a settlement agreement. The district court (Cohill, Chief Judge) held that National's acts in filing a request to the Commissioner of Patents and Trademarks for reexamination of Joy's patent (U.S. Patent No. 4,042,864) did not violate the terms of a settlement agreement under which National agreed not to file a suit challenging the validity of the subject patent. We affirm.

I

*Background*

In April, 1980, Joy brought an action against its competitor National for infringement of Joy's '864 patent which pertains to underground mining machinery. Settlement negotiations in 1983 between the parties, with the objective of making National a licensee under the patent, were unsuccessful. The principal point of dis-

agreement arose from National's refusal to admit the validity and its infringement of the '864 patent. As a result of a suggestion for compromise of this stumbling block by the then trial judge (Mansmann, J.), a settlement agreement was entered in April, 1984. The settlement agreement was not, however, incorporated into the judgment of the court. The final judgment is simply a judgment of dismissal of the complaint without prejudice.

On August 23, 1985, having advised Joy in June that it intended to do so, National filed a request to the Commissioner of Patents and Trademarks to reexamine the patentability of the subject invention in accordance with 35 U.S.C. § 302.[1] As a result of National's request, which included citation of art not previously considered by the PTO, on October 17, 1985,[2] the Commissioner determined that a substantial new question of patentability had been raised, and a reexamination of the patentability of the subject matter of the '864 patent is under way at this time.

On February 19, 1986, Joy filed a motion in the terminated infringement suit entitled "Motion to Enforce Settlement" by which Joy sought to reinstate the case and charged therein that National had breached the settlement agreement by requesting reexamination. Joy sought to enjoin National "from further proceeding in the reexamination procedures in the PTO"; "to withdraw" its reexamination request; and "to retrieve" all documents from the PTO. Joy also requested sanctions against National for its asserted misconduct. The district court denied the motion, and this appeal followed.

## II

### *Jurisdiction*

 This court has jurisdiction over this appeal only if the jurisdiction of the district court is based in whole or in part on 28 U.S.C. § 1338(a) (1982). The circuits are split on the question whether, after a final judgment is entered, a district court *retains* jurisdiction from the original action (in this case an action originally under 28 U.S.C. § 1338(a)) or must have an independent basis for jurisdiction (e.g., diversity) to enforce a settlement agreement *which was not* incorporated into the final judgment of the court.[3] *Compare Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir.) (motion to enforce settlement deemed a motion under Rule 60(b)(6) Fed.R.Civ.P. in original suit), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976), with *Fairfax Countywide Citizens Assoc. v. Fairfax County*, 571 F.2d 1299 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978); *Musifilm, B.V. v. Spector*, 568 F.Supp. 578 (S.D.N.Y.1983); *Backers v. Bit-She*, 549 F.Supp. 388 (N.D. Cal.1982) (enforcement is independent action). The Third Circuit apparently has not considered the issue, and it is unclear which view that court would take. *See Fox v. Consolidated Rail Corp.*, 739 F.2d 929, 932 (3d Cir.1984). Under these circum-

---

1. The reexamination statute and regulations predated the instant settlement agreement. The reexamination procedure became available on July 1, 1981. Pub.L. No. 96–517, 94 Stat. 3015 (1980) (codified as amended at 35 U.S.C. §§ 301–307 (1982)). The rules of practice in reexamination cases were promulgated on May 29, 1981, 46 Fed.Reg. 29,176–87, and were amended on May 19, 1982, 47 Fed.Reg. 21,746–53.

2. The decision letter was reissued on January 9, 1986, which is apparently the date that reexamination was formally instituted.

3. There is, of course, no contempt jurisdiction for the violation of an agreement which is not part of the judgment. Contempt lies for "dis-

obedience or resistance to [a court's] lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3) (1982). The only decree in this case is one of dismissal. The dissent characterizes the conclusion that there is no contempt jurisdiction here as "sweeping," and "inappropriate." Since this court, *sua sponte*, raised the question of lack of jurisdiction and must determine the issue, contempt is appropriately considered inasmuch as it is one basis for establishing our jurisdiction. *H.A. Jones Co. v. KSM Fastening Sys. Inc.*, 745 F.2d 630, 223 USPQ 689 (Fed.Cir.1984). The authority cited by the dissent concerning enforcement of settlements is irrelevant to the question of contempt jurisdiction.

stances, we see no reason to disturb the district court's implicit adoption of the *Aro* rationale which would make 28 U.S.C. § 1338(a) the basis for its jurisdiction over the motion, from which it follows that the district court's judgment is appealable to this court.[4]

### III

*Merits*

The order of the district court dismissing Joy's motion reads:

> AND NOW, to-wit, this 10th day of March, 1986, having carefully considered the briefs and exhibits filed on behalf of both parties, it is hereby ORDERED, ADJUDGED AND DECREED THAT Plaintiff, Joy Manufacturing Company's Motion to Enforce Settlement be and hereby is DENIED. We do not equate a request for administrative reexamination by the United States Patent and Trademark Office with filing a suit in a United States Court. *See In re Etter*, 756 F.2d 852 [225 USPQ 1] (Fed.Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). Therefore, National Mine Service Company Inc.'s request for reexamination does not violate the terms of the settlement agreement date April 2, 1984, between the above parties.

Joy has not persuaded us of legal error in the district court's interpretation of the settlement agreement. The pertinent parts of the agreement are the following:

### ARTICLE VII—FUTURE PROCEEDINGS

(a) During the term of this Agreement, NATIONAL will not file *any suit in any United States Court* or any Court in any foreign country challenging or contesting the validity of the Licensed Patents or contesting that the shuttle cars, continuous miners and other mobile mining machinery as defined in Article I, subparagraph (c) are not Licensed Prod-

ucts. However, if JOY should bring suit against NATIONAL for any shuttle car, continuous miner, or mobile mining machine product hereinafter designed by NATIONAL or on NATIONAL'S behalf having an AC/DC traction drive substantially different than utilized by the shuttle cars, continuous miners or other mobile mining machines identified in Article III, subparagraph (e), then *NATIONAL shall have the right to contest the validity of the patents* and the issue of infringement as to such accused newly designed products.

### ARTICLE XI—GOVERNING LAW

This Agreement shall be governed by and interpreted in accordance with the internal laws of the Commonwealth of Pennsylvania and the patent laws of the United States....

### ARTICLE XIV—MISCELLANEOUS

(a) No rights or licenses of any nature are granted to JOY or NATIONAL pertaining to the subject matter of this Agreement except as *specifically stated* herein.

(Emphasis added.)

■ The settlement agreement by its literal terms does not proscribe the conduct of which Joy complains. National agreed not to bring suit in any United States court challenging the validity of Joy's patent. National's filing of a request for reexamination in the PTO is not a suit in any United States court. The language of the agreement is unambiguous. Under general principles of Pennsylvania contract law, no further inquiry is appropriate. *See Amoco Oil Co. v. Snyder*, 505 Pa. 214, 220, 478 A.2d 795, 798 (1984) ("it is not the function of this Court to re-write [the contract], or to give it a construction in conflict with ... the accepted and plain meaning of the language used"); *Steuart v. McChesney*, 498 Pa. 45, 49, 444 A.2d 659, 661

---

**4.** National's objection to Joy's memorandum of October 23, 1986, is well taken. This court at oral argument requested supplemental briefing

on the issue of jurisdiction. Joy's inclusion in its memorandum of additional argument directed to the merits was a disservice to this court.

(1982) ("when the words are clear and un-ambiguous the intent is to be discovered only from the express language of the agreement").[5] Further, the contract itself provides that the parties have no rights unless *specifically* stated therein. More-over, the district court's conclusion that the settlement should not be given an expan-sive interpretation is reasonable in light of National's specific refusal to agree to a provision by which it would recognize the validity of the subject patent and the par-ties' subsequent negotiations which led the *court* itself to suggest the provision on which Joy relies. The agreement was a *limited* settlement, which by its own terms (Article VII) does not purport to resolve all potential conflict between the parties over the *validity* of the '864 patent.

Turning to "patent law," the district court correctly refused to equate "a re-quest for administrative reexamination ... with filing a suit in a United States Court." Its reliance on *Etter* as support for this legal conclusion was entirely appropriate. The *Etter* decision turned on the precise issue here, namely, that reexamination and civil litigation were distinctly different pro-ceedings. As stated therein:

> The intent that reexamination proceed-ings and court actions involving chal-lenges to validity be distinct and indepen-dent is reflected in the legislative history of § 303....

756 F.2d at 857, 225 USPQ at 4. The result in *Etter* is inseparable from the above-quoted premise.[6]

In this connection, we also note that the principal relief which Joy seeks—name-ly, stopping the reexamination of its pat-ent—is not available in these proceedings. *Accord* Manual of Patent Examining Pro-cedure § 2210 (5th ed. 1983); *Houston At-*

*las, Inc. v. Del Mar Scientific, Inc.,* 217 USPQ 1032, 1034 (N.D.Tex.1982), *aff'd,* 703 F.2d 555 (5th Cir.1983). The decision by the Commissioner to institute reexami-nation is not subject to review, *Etter,* 756 F.2d at 857, 225 USPQ at 4; and the injunc-tion sought against National would have no effect on reexamination since National, as the requestor, has no future role to play in that *ex parte* proceeding.

In view of the new reexamination proce-dure, parties would be well advised to draft agreements, where appropriate, to encom-pass this new facet of patent law.

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, concurring in part, dissenting in part.

### I.

I concur in the court's conclusion that jurisdiction of this appeal lies with the Fed-eral Circuit; Joy brought its motion under Fed.R.Civ.P. 60(b), and it is not disputed that the original suit arose under 28 U.S.C. § 1338. But I do not agree with the major-ity, at its second footnote, that the district court has "no contempt jurisdiction" in this case. The district court did not so hold; indeed, it accepted jurisdiction of a motion to enforce settlement, based on a Final Judgment which stated that the settlement was the reason for the dismissal:

> The parties hereto, having agreed upon a compromise and settlement of the mat-ters in issue between them ... [this ac-tion is dismissed].

*Joy Manufacturing Co. v. National Mine Service Co.,* No. 80–461, slip op. at 1–2 (W.D.Pa. May 2, 1984). For breach of this agreement Joy requested sanctions, along

---

**5.** Contrary to Pennsylvania law and the express language of the contract itself (Article XIV), the dissent would require the district court to deter-mine the subjective intent of the parties and the trial judge at the time the agreement was made so that "Joy is thus not evicted from the eq-uitable jurisdiction of the court." Pennsylvania law mandates enforcement of unambiguous contract language. The dissent's position, as well as other arguments of Joy, e.g., that it

should not be held to have waived a jury trial, would be appropriate in an action for re-scission, not enforcement, of the agreement.

**6.** *Etter* is a major *in banc* decision which ex-pressly *states* therein that its purpose is to pro-vide guidance for future controversies. Con-trary to the dissent, the *Etter* decision is highly relevant.

with specific performance and other remedies.

The parties did not brief this point, which was not raised below. The sweeping statement of the majority, that contempt is not available under such circumstances, is contrary to precedent. *See, e.g., Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371, 190 USPQ 392, 394 (6th Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976) ("It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them"); *Kukla v. National Distillers Products Co.*, 483 F.2d 619, 621 (6th Cir.1973) ("the power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing"). A court's "enforcement" power should not be diminished in such circumstances and it is inappropriate for this court, even in dictum, to excise a trial court's power to find parties in contempt.

## II.

I respectfully disagree with the majority's affirmance of the district court's summary ruling that the settlement agreement did not bar National's reexamination request. The district court rejected Joy's argument that at least one of the parties, Joy, did not so intend when it agreed to the settlement terms, and the record supports Joy's argument that the district judge then presiding (now Circuit Judge Mansmann), a different judge from the one who decided the motion for enforcement (Judge Cohill), may not have so intended. An inquiry into the intent underlying the settlement is essential not only in the interest of justice, but to preserve the authority of the court in terminating litigation.

The parties tell us that Judge Mansmann had suggested the solution to the impasse in settlement negotiations encountered because of National's reluctance to concede the validity of the patent in suit. As Joy tells it, the suggestion and the intention was that National need not concede validity, but need only agree not to initiate a legal challenge to validity. As expressed in the signed settlement agreement, National undertook not to "file any suit in any United States Court or any Court in any foreign country challenging or contesting the validity of the Licensed Patents". National had drafted the agreement text which it described as "setting forth the provisions suggested [by the district court]", and Joy had accepted them.

The trial judge's suggestion in aid of settlement was in accordance with the public policy to end litigation, to conserve resources, and to resolve disputes. *See Aro Corp.*, 531 F.2d at 1372, 190 USPQ at 395 ("Settlement is of particular value in patent litigation, the nature of which is often inordinately complex and time consuming").

This dispute was settled with compromise, it appeared, on both sides. National has now claimed all the benefits of the settlement: the license to practice the invention, a negotiated royalty instead of the uncertainty of possible damages, freedom from threat of injunction, and saving of litigation cost; but denies that it was bound to refrain from attacking the validity of Joy's patent by requesting reexamination, because the Patent and Trademark Office is not a court.

Only fourteen months after the settlement agreement was signed National advised Joy that, while National would "continue paying fees ... during the reexamination proceedings", it "simply desire[s] to seek, via reexamination proceedings, a review of the claims of Patent 4,024,864 and hopefully obtain results that are favorable to NMS." Such "favorable to NMS" results can only be invalidation of the claims of the patent.

A decision of invalidity on reexamination is as effective in removing a patent, for all practical purposes, as is a decision by a district court. It is subject to judicial review, and thus only indirectly escapes the literal terms of the settlement.

We observe that National was not a passive initiator of the reexamination, but pro-

vided the PTO with much of the prior art that National had previously presented to the district court in support of its defense of patent invalidity. It is cynical to enable the accused infringer to reopen hostilities in another forum without any inquiry into whether Joy and the court were gulled into an erroneous belief that the entire matter in litigation was settled.[1]

Judge Cohill held that National had not violated the settlement because "[w]e do not equate a request for administrative reexamination by the United States Patent and Trademark Office with filing a suit in a United States Court". *Joy Manufacturing Co. v. National Mine Service Co.*, No. 80–461 (W.D.Pa. March 10, 1986) (Order denying Motion to Enforce Settlement). The district court relied on *In re Etter*, 756 F.2d 852, 225 USPQ 1 (Fed.Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

*Etter* held that reexamination in the PTO is conducted in accordance with the same standards as examination, and that a patent in reexamination does not benefit from the procedural presumption of 35 U.S.C. § 282 that accompanies an issued patent into litigation.[2] *Etter* does not control the question before us, which is entirely one of interpretation of the settlement terms. Joy does not assert that the PTO is a United States Court. Whether or not National violated the letter or spirit of the understanding of the parties and the presiding judge when National initiated the PTO reexamination is not a question for which *Etter* provides enlightenment. The intention and integrity of the settlement is the issue, not the presumptions and burdens in PTO examination.

National argues that reexamination was always available. But National's timing is at best irregular. The general practice,

when a party to litigation proposes that a patent be reexamined, is that the trial court's authorization is sought, including stay of the litigation pending completion of the reexamination, since the PTO will not reexamine patents that are before a court. *See* Manual of Patent Examining Procedure § 2286 (5th ed. 1983). We have upheld the trial court's authority to stay litigation for this purpose. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341–42, 217 USPQ 985, 986 (Fed.Cir.), *cert. denied,* 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983). No such suggestion or motion was made by National at any time while this case was before the district court. The reexamination statute is often described as an alternative to litigation, *see, e.g.,* H.R. Rep. No. 1307 Part 1, 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.Code Cong. & Admin.News 6460, 6463, not as a postscript to it.

There is no hint that the trial court was made aware that its suggested compromise of the major obstacle to settlement (National's unwillingness to "concede" validity) would not end the dispute as between the parties before the court. As it now stands National is safe from injunction and yet is unfettered in this attack, on which it can not lose: if the patent survives reexamination, National will retain its license under the royalty terms negotiated under different circumstances; and if it does not, National will be free of its royalty obligation.

The majority states that holding National to the principle of its bargain would constitute an "expansive interpretation" of the settlement agreement, and thus denies Joy the opportunity to determine the proper interpretation of the agreement. The record before the district court on this Motion, and particularly National's own affi-

---

1. The majority describes this as a "limited settlement". I can find no basis for this description in any of the documents associated with either the settlement or the ensuing dismissal.

2. *Etter,* a case decided by this court *in banc,* stands solely for the proposition I have stated, and indeed this is the basis on which the district court relied in the case at bar. *Etter* does not

carry the enlarged meaning now ascribed to it, and indeed the majority skews the plain reading of that decision in a manner that is not only unnecessary to the case now before us, but that was not adopted by the court *in banc.* It is, in my view (and as a member of the majority in *Etter* ) contrary to the reexamination statute and contrary to the Congressional purpose.

davit testimony, supports Joy's view as much as its own.

The affidavit of James D. Morton, counsel for National, shows that National's reluctance to concede validity was ostensibly for a quite different purpose. Mr. Morton avers that "Joy was insisting on a final judgment which held the patent was valid and infringed so that such a judgment would be res judicata. I explained that National did not believe the patent was valid or infringed and would not consent to a judgment which it did not believe was correct, particularly since such a judgment could be used by Joy as an adjudication of validity if it sued others." These concerns of National are plainly met by the settlement agreement, whether or not National is precluded from initiating reexamination of the Joy patent.

Thus National's principal stated reason for declining to concede validity—its sympathy for other accused infringers—does not comport with the reason it later gave Joy for reexamination: to seek "results favorable to NMS". Nor does it prevent the court from determining the intent of the parties at the time the agreement was made, particularly whether the parties intended that National could continue to attack the patent as long as it stayed outside of a United States Court. The intention of the parties to a contract is not immune from inquiry. As stated in 3 Corbin on Contracts § 542 (1960): "Some of the surrounding circumstances always must be known before the meaning of the words can be plain and clear; and proof of the circumstances may make a meaning plain and clear when in the absence of such proof some other meaning may also have seemed plain and clear." The Restatement (Second) of Contracts § 202(i) (1981) agrees: "Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the par-

ties is ascertainable it is given great weight."

I do not excuse Joy's asserted failure to recognize this loophole, or to plug it if it was recognized. But it is also possible that a sharp practice was perpetrated on the district court, as well as upon Joy, in neither of which this court should assist. Thus I believe the district court erred in denying Joy the opportunity for discovery and an evidentiary hearing on the issue of intent and contract interpretation, and I would remand for that purpose.[3]

---

**3.** The majority advises that Joy could "appropriately" raise these issues in an action to rescind, not enforce, the settlement agreement. Whether such an alternative is available, I disagree with the majority's dictum that it is the only

relief. Joy is not thus evicted from the equitable jurisdiction of the court, or obliged to start over as if there had been no lawsuit and no settlement before the district court. The judicial process need not be so abused.