Thomas HEINL, Plaintiff,

v.

Nicholas P. GODICI, Defendant.

Civil Action No. 01–458–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 30, 2001.

Rouget Frederic Henschel, Lyon & Lyon LLP, Washington, DC, for plaintiffs.

Rachel Celia Ballow, U.S. Attorney's Office, Alexandria, VA, for defendants.

### MEMORANDUM OPINION

ELLIS, District Judge.

This is an action by a patentee to prevent a second, and in his view, illegal reexamination of his patent. More specifically, plaintiff, Thomas Heinl, owner of

Patent No. 4,903,691 ("the '691 Patent"), sues to enjoin defendant[1] from proceeding on a second reexamination of the '691 patent in Reexamination Control No. 90/005,809 ("the '809 Reexamination") on the ground that the second reexamination does not present a substantial new question of patentability, as required by 35 U.S.C. § 303.

## I.

The '691 patent claims a set of surgical instruments for joining bone fragments. It issued on February, 27, 1990. Nine years later, on February 25, 1999, Medicon eG ("Medicon") filed a third-party request for reexamination. The PTO granted Medicon's request on April 27, 1999. *See* Reexamination Control No. 90/005,275 ("the '275 Reexamination"). The '275 Reexamination was based on Medicon's submission of (i) four medical instrument catalogs and (ii) a declaration by Karl–E Lieberman, a manager at Medicon, declaring on "information and belief" that the catalogs qualify as prior art with respect to the '691 Patent. On January 18, 2000, in the first office action in the '275 Reexamination proceeding, the examiner reject-

ed the '691 Patent as anticipated by the four catalogs. On March 20, 2000, plaintiff filed a timely response to this office action, arguing that the rejection of the patent was in error because "[t]here is no evidence whatsoever in the Request for Reexamination that the [catalogs would constitute] a printed publication citable as prior art against [the '691 Patent]." Because the request for reexamination "failed to provide any evidence or showing that the [catalogs] would fall within the definition of prior art," plaintiff argued that the rejection of the '691 Patent should be withdrawn.[2] Medicon filed a further submission arguing that the catalogs are prior art and attached an additional declaration by Lieberman attesting to the prior art nature of the catalogs. The examiner refused to consider this submission, noting correctly that, by regulation, a third-party requester's participation in a reexamination ends with a reply to the patentee's statement in response to the request for a reexamination.[3] And, because plaintiff here elected not to file a statement under 37 C.F.R. § 1.530 prior to the first office action on January 18, a reply by the third-party requester was properly not permit-

---

1. Named as defendant is Nicholas Godici who is the Acting Undersecretary of Commerce for Intellectual Property and the Acting Director of the Patent and Trademark Office. The defendant is referred to throughout as the "PTO." Where appropriate, specific actions are attributed to the "Director" or the "patent examiner."

2. Plaintiff noted that there is "absolutely no indication or evidence" that the four catalogs were generally available to those skilled in the art prior to the effective filing date of the '691 Patent, which is January 22, 1986. Specifically, with respect to each catalog, plaintiff noted as follows: (i) While the Howmedica Catalog, entitled "Mini–Compression–System," carries a copyright date of 1985, there is no indication of what month in 1985 that catalog was published. Thus, there is no evidence that this catalog was made available

prior to the effective filling date of the '691 Patent; (ii) The Kloman Instrument Company, Inc. catalog is stamped with a December 29, 1993 receipt date in a German library, and therefore, it cannot be said that it was generally available before the effective filing date of the '691 Patent; (iii) The Martin Cataloque does not indicate precisely when it was published, and therefore there is no evidence that it was generally available before the effective filing date of the '691 Patent; and (iv) The Medicon Instruments Catalog does not carry any date of publication.

3. *See* 37 C.F.R. § 1.550(g) ("The active participation of the *ex parte* reexamination requester ends with the reply pursuant to § 1.535, and no further submissions on behalf of the reexamination requester will be acknowledged or considered.").

ted.[4] Accordingly, the third-party requester's second submission, including Lieberman's additional declaration, was not made part of the record in the '275 Reexamination.

Thereafter, on July 19, 2000, the examiner withdrew the rejection of the patent claims that had issued in the first office action and issued a Notice of Intent to Issue a Reexamination Certificate ("NIRC") for the '691 Patent. In doing so, it appears that the examiner found the record inadequate to reach a conclusion on whether the four catalogs constituted prior art with respect to the '691 Patent. For this reason, the examiner "withdrew the rejections based on the catalogs" and confirmed the claims of the '691 patent.

The final step in the patent reexamination process is the issuance of a certificate of patentability. No certificate of patentability has yet issued as a result of the '275 Reexamination. Instead, in the interim, Medicon filed a second request for reexamination on September 5, 2000. On the cover page of this reexamination request, Medicon states that this reexamination is "substantially the same as the first reexamination request" and "presents again and applies prior art submitted in [the '275 Reexamination] by the same third-party requester."

Less than a month later, on October 3, 2000, plaintiff filed a petition with the PTO seeking the denial or termination of the second reexamination request. On October 20, 2000, the PTO examiner, without addressing plaintiff's October 3, 2000 petition, issued an order granting the second reexamination request, now denominated the " '809 Reexamination." Thereafter on February 5, 2001, the Director issued a decision denying plaintiff's petition to terminate the '809 Reexamination. He gave

two reasons for his decision. First, he noted that the '809 Reexamination was not filed for purposes of harassment, but rather to address a substantial new question of patentability, which had not been considered in the '275 Reexamination. And second, he noted that *In re Portola Packaging, Inc.*, 110 F.3d 786 (Fed.Cir.1997), did not bar the '809 Reexamination because there, unlike the instant case, the second reexamination followed a concluded first reexamination. Here, the first reexamination—the '275 Reexamination—had not yet concluded, as no certificate of patentability had issued.

On March 6, 2001, plaintiff informed the PTO that he was considering seeking judicial review of the Director's February 5 decision denying plaintiff's petition seeking the denial or termination of the '809 Reexamination. After a two week review of its decision, the Director informed plaintiff that it would adhere to its initial denial of plaintiff's petition. Following this, plaintiff filed the instant action on March 22, 2001. On April 6, 2001, plaintiff's motion for a temporary restraining order was denied, but to expedite resolution of the matter, the hearing on the merits—presented via the PTO's motion to dismiss—was advanced and consolidated with the hearing on the motion for a preliminary injunction, pursuant to Rule 65(a)(2), Fed.R.Civ.P. *See Heinl v. Godici*, C.A. No. 01–458–A (E.D.Va. Apr.6, 2001) (Order). Thereafter, the parties submitted supplemental memoranda and presented further oral argument. Accordingly, the matter is now ripe for resolution.

## II.

Plaintiff seeks judicial review of the PTO's decision to grant the '809 Reexami-

---

4. Presumably, plaintiff chose not to file a statement prior to the first office action pre-

cisely because it would prevent a reply by the third-party requester.

nation request and an injunction enjoining the PTO from proceeding on a second reexamination of the '691 Patent. The threshold question is whether there is jurisdiction for judicial review of this PTO decision.

### A. *35 U.S.C. § 303(c)*

■ At the threshold, the PTO argues that 35 U.S.C. § 303(c) bars judicial review of the Director's decision *granting* a reexamination of the '691 Patent. This argument founders on § 303(c)'s plain language,[5] which explicitly addresses only a *denial* of a petition for reexamination, not the *grant* of such a petition. Nor is the statute's focus solely on the denial of a reexamination the result of accident or inadvertence. The House Committee Report also focuses solely on the effects of the denial of a petition for reexamination, noting that the statute's judicial review bar would not deprive a requester of any legal right in the event of a denial of reexamination because the requester remains free to urge the same invalidity argument in subsequent infringement litigation. In sum, because § 303(c)'s language and rationale address only PTO decisions to deny reexamination petitions, the statute does not bar review of PTO decisions to grant reexaminations. The PTO's argument to the contrary simply asks the language of the

statute to carry more weight than it can bear.

Undeterred by the narrow, but clear focus of the statute's text, the PTO next argues that a more expansive interpretation of § 303(c) is supported by the Federal Circuit's holdings in *In re Etter*, 756 F.2d 852 (Fed.Cir.1985) and *Joy Manufacturing Co. v. National Mine Service Company, Inc.*, 810 F.2d 1127 (Fed.Cir.1987). This argument fails as neither decision, closely read, supports such a conclusion. Although both opinions include broad statements suggesting that § 303(c) covers both grants and denials of reexaminations,[6] it is clear that both statements are mere *dicta*. The parties agree this is so in *Joy Manufacturing*, but dispute whether it is so in *Etter*.

The central question before the Federal Circuit in *Etter* was whether the presumption of validity found in 35 U.S.C. § 282, which is clearly applicable in patent infringement suits, must also be applied to claims in reexamination proceedings.[7] Thus, the proper interpretation of § 303(c) was not before the *Etter* court, from which it follows that the statement in *Etter* concerning § 303(c) was necessarily dictum. The *Etter* opinion, moreover, focused only on the effect of a decision to deny a request for reexamination. In the end, *Etter* and *Joy Manufacturing* do not support

---

5. 35 U.S.C. § 303(c) provides, in pertinent part, that "[a] determination by the Commissioner pursuant to [§ 303(a)] that no substantial question of patentability has been raised will be final and nonappealable." *Id.*

6. In *Etter*, the Federal Circuit stated that the question of whether "a substantial new question of patentability exists ... is final, i.e., not subject to appeal." *Etter*, 756 F.2d at 857. In *Joy Manufacturing*, the Federal Circuit, relying on *Etter*, noted, in dicta, that the "decision ... to institute reexamination is not subject to review." *Joy Mfg.*, 810 F.2d at 1130.

7. *See Etter*, 756 F.2d at 855. Specifically, the court held that the presumption of validity does not apply to reexamination proceedings because of the differences between a reexamination proceeding and a court action challenging the validity of a patent. For example, the court noted that the intent of reexamination proceedings is to "conduct[ ] a subjective examination of claims in light of prior art." *Etter*, 756 F.2d at 857–58. By contrast, the court noted that in a patent infringement suit, a litigant "is attacking the validity of a patent [and] bears the burden set forth in § 282." *Id.* at 857.

the PTO's effort to expand § 303(c) beyond its plain meaning, which only bars judicial review of PTO decisions to *deny* reexamination.

Yet, this conclusion does not end the jurisdictional analysis. It remains to be seen whether the Administrative Procedure Act and its related doctrines allow judicial review of the PTO's decision to grant reexamination in the circumstances of this case.

### B. *Administrative Procedure Act*

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, governs decisionmaking by federal agencies and specifically limits judicial review of agency actions to review of "final" agency actions. APA, 5 U.S.C. § 704, provides, in pertinent part, that

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the *final agency action.*

5 U.S.C. § 704 (emphasis added). The rationale of the final agency action principle is clear. Judicial review prior to a final determination by an agency is likely to interfere with the "proper functioning of [an] agency and [create] a burden for the

courts." *Federal Trade Comm'n v. Standard Oil Co.,* 449 U.S. 232, 242, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). Moreover, "judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise ... [and] leads to piecemeal review which at least is inefficient and ... might prove to have been unnecessary." *Id.* (citing *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) and *McGee v. United States,* 402 U.S. 479, 484, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971)).[8] Thus, the APA limits review to agency actions that are final.

■ This principle, applied here, compels the conclusion that the PTO's decision to allow reexamination of a patent is not "final agency action" and, therefore, is not subject to judicial review at this time. This is so because the decision by the patent examiner to grant the '809 Reexamination is an intermediate, indeed initial, step in the agency process to resolve the question of the validity of a patent.[9] And, as noted, § 704 of the APA explicitly prohibits judicial review of such intermediate actions.

Courts are uniform in recognizing that the decision to grant reexaminations of a patent is preliminary, not final agency action, because there are at least three points in the reexamination process where the patentee "might prevail in its attempts to convince the examiner of the validity of

---

8. In *Abbott Labs. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court, in explaining the congressional intent underlying § 704, stated that

> Its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Id.* at 148, 87 S.Ct. 1507.

9. The decision to grant reexamination of a patent only begins an administrative process and, as such, is analogous to the Federal Trade Commission's issuance of a complaint, which the Supreme Court in *Standard Oil* stated was not final agency action subject to judicial review, but merely a "determination that adjudicatory proceedings will commence." *Standard Oil,* 449 U.S. at 241, 101 S.Ct. 488.

its patent or, more to the point, in its demands for withdrawal of the order granting the second re-examination...." [10] Victory at any of these stages would moot the question whether the initial decision to grant reexamination was correct. Thus, following the filing of a request for a reexamination, the statute allows three months for the PTO, through an examiner, to determine whether a substantial new question of patentability exists. *See* 35 U.S.C. § 304. If the examiner finds that a new question of patentability is presented, an order for reexamination will issue. *See id.* At this point, the patent owner may file a statement discussing the new questions of patentability raised in the reexamination order or any other issues the patent owner wishes to raise. *See id.* Based upon this filing and any response by the third party requester, the examiner issues a first office action concerning the patent's validity. A decision confirming the patent's validity renders moot the question whether the reexamination petition should have been granted. In the event of a decision adverse to the patent, the patentee may then seek review of this decision by filing a timely written response with the PTO. *See* 37 C.F.R. § 1.550. This, in essence, permits the examiner to reconsider the determination that a claim is unpatentable. This reconsideration creates a second opportunity to moot the need for judicial review of the decision to grant a reexamination. The third opportunity arises in the event the examiner, in response to a request to review the issuance of the first office action, continues to find the claims unpatentable and issues a final office action, under 37 C.F.R. § 1.570. At this point, the patentee may appeal this determination to the Board of Patent Appeals.

*See* 35 U.S.C. § 306. If the appeal succeeds, there is again no need for judicial review of the decision to grant reexamination. On the other hand, if the appeal is unsuccessful, then the patentee has both exhausted his administrative remedies, and a final agency action has occurred. Accordingly, judicial review may then appropriately be sought in either the Federal Circuit based on the administrative record or the District Court for the District of Columbia in a trial *de novo*. *See id.*

In sum, the decision by the PTO to grant the '809 Reexamination is an intermediate or preliminary decision, not final agency action, and hence is not ordinarily subject to judicial review under APA § 704. There are, however, exceptions to the final agency action rule which must be considered in this case. Specifically, plaintiff asserts four different exceptions to the final agency action requirement: (i) reexaminations cause irreparable harm; (ii) the decision to grant a reexamination is insulated from later review; (iii) the PTO's actions are ultra vires; and (iv) a facial challenge to the Manual of Patent Examiner's Procedure § 2240. Each explanation is separately addressed; none is persuasive here.

### (i) *Irreparable Harm*

Plaintiff contends that he should not be required to await final agency action because he will otherwise suffer irreparable harm. Specifically, plaintiff contends that the issuance of the order granting a second, unwarranted reexamination causes irreparable harm because it carries a "stigma or uncertainty regarding entitlement to

---

**10.** *Allegheny Ludlum Corp. v. Comer*, 24 U.S.P.Q.2d 1771, 1775–76 (W.D.Pa.1992); *see also Patlex v. Mossinghoff*, 771 F.2d 480, 485 (Fed.Cir.1985) (*"Patlex II"*) (noting that

"[t]he determination that a substantial new question of patentability exists is a *preliminary* decision. It is not a final determination....").

the patent," [11] thereby damaging the patent owner's legal right to exploit the patent.[12] Furthermore, plaintiff contends that courts often decline to resolve the merits of a patent infringement suit brought by a patent owner while the patent in issue is subject to a reexamination proceeding, electing instead to stay resolution of the infringement suit pending conclusion of the reexamination proceeding. Plaintiff argues that these harms, which he categorizes as irreparable, merit judicial review of the decision to grant a reexamination, irrespective of the existence of a final agency action.

While a showing of irreparable harm may serve as an exception to the APA final agency action requirement, plaintiff has not made such a showing here. As the Federal Circuit has noted, the determination of the existence of a substantial new question of patentability "lacks those special characteristics of irreparable harm which have characterized exceptions to the [final agency action] rule." *Patlex II,* 771 F.2d at 485. Simply put, while reexamination of a patent may raise a concern about the strength of a patent, this concern does not rise to the level of irreparable harm and, therefore, does not justify abandonment of the final agency action requirement in this case.

This conclusion finds firm support in analogous Supreme Court authority. In *Standard Oil,* the Supreme Court held that the Federal Trade Commission's issuance of a complaint against Standard Oil and others did not constitute irreparable harm sufficient to warrant an exception to the final agency action rule. *See Standard Oil,* 449 U.S. at 239–242, 101 S.Ct. 488. In reaching this result, the Supreme Court noted that irreparable harm occurs where

the agency action had "the status of law" and "immediate compliance with their terms was expected." *Id.* at 239–40, 101 S.Ct. 488. To illustrate this point, the Supreme Court cited *Abbott Laboratories,* wherein a regulation required manufacturers of prescription drugs to print certain information on drug labels and advertisements. This regulation had a " 'direct and immediate ... effect on the day-to-day business' of the complaining parties." *Id.* at 239, 101 S.Ct. 488 (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). In other words, irreparable harm was found to exist because immediate action or compliance was required. Parties failing to comply would " 'risk serious criminal and civil penalties' for noncompliance ... or [be required to] invest heavily in new printing type and new supplies." *Standard Oil,* 449 U.S. at 242, 101 S.Ct. 488 (quoting *Abbott Labs.,* 387 U.S. at 152–53, 87 S.Ct. 1507 (internal citations omitted)). The Supreme Court contrasted the *Abbott Laboratories* facts with those of the *Standard Oil* case. In *Standard Oil,* an agency issued a complaint based on "reason to believe" that various companies were violating the Federal Trade Commission Act. The issuance of the complaint merely initiated proceedings before an administrative law judge; it was not a "definitive statement of position[, but rather] a threshold determination that further inquiry is warranted," and it had "no legal force ... nor any comparable effect upon [the company's] daily business." *Standard Oil,* 449 U.S. at 242, 101 S.Ct. 488.

These principles, applied here, compel the conclusion that the decision to grant the '809 Reexamination for a reexamination, albeit a second reexamination of the '691 Patent, does not cause irreparable

---

**11.** *Bruning v. Hirose,* 161 F.3d 681, 685 (Fed. Cir.1998).

**12.** *See In re Recreative Techs. Corp.,* 83 F.3d 1394, 1397 (Fed.Cir.1996).

harm sufficient to justify judicial review. In this regard, the facts of the instant case are analogous to those in *Standard Oil* and distinguishable from the facts in *Abbott Laboratories*. Significantly, the decision to grant a reexamination does not require any immediate compliance on plaintiff's part. Plaintiff is neither at risk of criminal prosecution or civil liability, nor is he required to take steps to comply with any order or regulation. Moreover, plaintiff's argument that the '809 Reexamination will lessen the useful life of the '691 Patent has been squarely rejected by the Federal Circuit, which held that the "effect, if any, of reexamination is temporary with respect to correctly granted patents. If the patents are upheld upon reexamination[, the patent owner] will continue to possess the entire bundle of property rights that accompany a valid patent." *Patlex v. Mossinghoff*, 758 F.2d 594, 603 (Fed.Cir.1985) (*"Patlex I"*), *rev'd on other grounds, Patlex II*, 771 F.2d 480 (Fed.Cir.1985). Specifically, plaintiff can recover damages from those who have infringed his patent during reexamination and can still recover full compensation. *See Patlex I*, 758 F.2d at 603. Moreover, if the '809 Reexamination upholds the validity of the '691 Patent, plaintiff will receive a benefit from the increased confidence the public will have in the validity of the patent. Accordingly, no exception to the final agency action requirement is warranted by the order to grant the '809 Reexamination because plaintiff has not demonstrated that he will suffer irreparable harm as a result of the reexamination.

### (ii) Unreviewability of Examiner's Decision at any Later Stage

Plaintiff also argues that an exception to the final agency action rule is warranted because the decision to grant the '809 Reexamination will be insulated from review at any other stage of the proceeding. If judicial review is sought after the decision by the Board of Patent Appeals, plaintiff contends that the decision by the examiner to grant the request for a second reexamination will be unreviewable. In support, plaintiff relies on *In re Hiniker Co.*, 150 F.3d 1362 (Fed.Cir.1998). There, the Federal Circuit held that because the appeal to the Federal Circuit was taken from the decision of the Board of Appeals, "any error in [the decision by the examiner] was washed clean during the reexamination proceeding." *Id.* at 1367.

Plaintiff's argument and reading of *Hiniker* are both unpersuasive. While it is true, as *Hiniker* noted, that the decision of the examiner to grant reexamination is not reviewable following an appeal to the Board of Patent Appeals, nowhere did the Federal Circuit hold in *Hiniker* that the patent owner had a right of immediate judicial review of the threshold determination. To the contrary, the Federal Circuit noted that "there is no provision granting us direct review" of the decision to institute a reexamination and that direct review of reexamination decisions by the Board of Patent Appeals provides sufficient protection against harassing and duplicative examinations. *See id.* (noting that "no claims may be ultimately denied over art that does not raise a substantial new question of patentability").

Plaintiff's argument on unreviewability has also been rejected by the Supreme Court in *Standard Oil*. There, the Supreme Court stated that the possibility that a final agency order could be upheld even though the decision to institute the agency action was unjustified "does not affect the application of the finality rule." *Standard Oil*, 449 U.S. at 245, 101 S.Ct. 488. In other words, the final agency action rule should not be set aside simply because an agency decision to initiate ac-

tion may be "washed clean" by later agency action and hence escape judicial review.

### (iii) Ultra Vires Action

Plaintiff urges a third exception to the final agency action requirement here, namely that judicial review is proper at this time because the PTO's action in granting the '809 Reexamination is ultra vires. Under the well-established ultra vires doctrine, the exhaustion and final agency action requirements are excused "only if [plaintiff] is able to show that the [PTO] clearly 'exceeded its statutory authority.'" [13] Put differently, when an agency acts in "brazen defiance" of its statutory authorization, courts need not await the conclusion of the underlying proceedings.[14] Here, plaintiff contends that the decision to grant the request for a second reexamination was ultra vires because it was in violation of 35 U.S.C. § 303(a), which provides that a request for reexamination will be granted only if there is a substantial new question of patentability. Accordingly, because the third-party requester admitted that no new questions of patentability were raised by the request for a second reexamination, plaintiff argues that the principles established by In

re Portola Packaging, Inc., 110 F.3d 786 (Fed.Cir.1997) and In re Recreative Technologies, 83 F.3d 1394 (Fed.Cir.1996) bar a second reexamination.

■ Plaintiff's argument is unpersuasive and rests on a misreading of Portola and Recreative Technologies. To begin with, plaintiff has failed to show that the PTO acted in "brazen defiance" of its statutory authorization. Philip Morris, Inc. v. Block, 755 F.2d 368, 370 (4th Cir.1985). While it is true that the PTO may only grant reexaminations that raise substantial new questions of patentability, plaintiff fails to acknowledge that the '809 Reexamination did, in fact, raise a substantial *new* question of patentability, namely whether any of the catalogs were prior art that anticipated or rendered obvious the '691 Patent. This question was never reached or decided by the examiner in the '275 Reexamination because that record was incomplete. Thus, this question, now squarely presented in the '809 Reexamination, is properly a substantial new question of patentability.

Particularly relevant on this point is Manual of Patent Examining Procedure ("MPEP") [15] § 2242, which discusses when

---

13. *Philip Morris, Inc. v. Block,* 755 F.2d 368, 370 (4th Cir.1985) (quoting *Mayor and City Council of Baltimore v. Mathews,* 562 F.2d 914, 920 (4th Cir.1977), *vacated on other grounds,* 571 F.2d 1273 (4th Cir.1978)).

14. *Philip Morris, Inc.,* 755 F.2d at 369–70 ("Judicial intervention is authorized when an agency acts in brazen defiance of its statutory authorization.") (internal quotation omitted); *see also Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) (district court had jurisdiction because the National Labor Relations Board joined professional and nonprofessional employees in a bargaining unit without polling the professionals, as required by the statute.); *Skinner & Eddy Corp. v. United States,* 249 U.S. 557, 562–63, 39 S.Ct. 375, 63 L.Ed. 772 (1919) (district court had jurisdiction because Interstate

Commerce Commission permitted new rate filings without hearings required by statute); *Taylor v. Cohen,* 405 F.2d 277, 280–81 (4th Cir.1968) (district court lacked jurisdiction because agency's actions fully complied with statutory requirements).

15. "The [PTO's] MPEP is a reference work on patent practices and procedures and does not have the force of law, but it has been held to describe procedures on which the public can rely." *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1425 (Fed.Cir.1988) (citations omitted). Moreover, the MPEP sets forth established PTO interpretations of the patent statutes, which are entitled to deference by the judiciary. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

a substantial new question of patentability is presented. Specifically, § 2242 provides that

> If the prior art patents and printed publications raise a substantial question of patentability of at least one claim of the patent, then a substantial new question of patentability is present, unless the same question of patentability *has already been decided* by (1) a final holding of invalidity by a Federal Court or (2) by the Office in a *previous examination* of the patent.

MPEP § 2242 (emphasis added). In order for prior art to have been decided in a previous examination, its "relevance to patentability of the claims [must have been discussed] in [a] related PTO proceeding." *Id.* Put differently, if prior art was previously relied on to reject a claim in a prior reexamination, a subsequent reexamination cannot be ordered based only on that prior art. MPEP § 2242 provides a number of illustrative examples to anticipate questions that might arise under the substantial new question of patentability standard. One of these examples is analogous and instructive here:

> Another example involves the situation where an examiner discussed a reference in a prior PTO proceeding, but did not either reject a claim based upon the reference or maintain the rejection based on the mistaken belief that the reference did not qualify as prior art. For example, *the examiner may not have believed that the reference qualified as prior art because: (i) the reference was undated or was believed to have a bad date.* . . . If the reexamination request were to *explain how and why the reference actually does qualify*

*as prior art*, it may be appropriate to rely on the reference to order and/or conduct reexamination.

MPEP § 2242(A)(5) (emphasis added).

Thus, the MPEP points persuasively to the conclusion that the order granting the '809 Reexamination based on the four catalogs did not contravene 35 U.S.C. § 303(a). This is so because the examiner reached no decision concerning either the status of the four catalogs as prior art or their effect on the '691 Patent. Specifically, the examiner stated that "the printed publications submitted by the requester do not constitute prior art" because there is no "evidence or reasonable belief that the publication was generally available to those . . . before the effective filing date of patent application such that the skilled artisan could readily locate the printed publication if a search for the publication was undertaken." A fair construction of the examiner's statement is that he did not determine in the '275 Reexamination whether the four catalogs qualified as prior art because there was insufficient evidence to do so. Moreover, plaintiff's arguments in response to the first office action support this conclusion. There, plaintiff did not argue that the examiner should make a finding that the catalogs were not prior art, but rather, he argued that the evidence did not permit the examiner to make any finding regarding their status as prior art. *See supra* note 2. Accordingly, the catalogs are not prior art that was previously relied upon to reject a claim, and therefore, their submission in the '275 Reexamination does not bar their submission and consideration in the subsequent '809 Reexamination.[16]

---

16. Had the examiner made a finding or final determination in the '275 Reexamination that the four catalogs did not qualify as prior art or that the catalogs as prior art did not antici-

pate or render obvious the '691 Patent, then, in either such event, there would be jurisdiction to proceed in this case under the ultra vires exception to the final agency action rule.

Contrary to plaintiff's contention, this conclusion is actually supported by *Portola* and *Recreative Technologies*. In *Portola*, the Federal Circuit overturned a rejection of a patent in a second reexamination where that rejection was based on two references that the PTO examiner had explicitly concluded did not qualify as prior art in the first reexamination. *See Portola*, 110 F.3d at 787, 791 (noting that "permitting the PTO to redo what it was expected to have done earlier would lead to the burdensome procedures Congress sought to avoid" in establishing PTO reexamination proceedings); *see also Recreative Techs.*, 83 F.3d at 1395–96. These cases, which rest on the notion that "government officials are presumed to have 'properly discharged their official duties,'" establish the sensible principle that the reexamination statute is not to be used to force patent holders to defend their patents against references that had been considered by the PTO during the original examination. *Portola*, 110 F.3d at 790 (quoting, *United States v. Chemical Found., Inc.*, 272 U.S. 1, 15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)). This principle is not implicated here because, as noted, no decision in the '275 Reexamination was made regarding whether the four catalogs qualify as prior art. Thus, in allowing the '809 Reexamination to proceed, the PTO is neither invoking burdensome procedures to harass a patent holder, nor violating 35 U.S.C. § 303(a). Accordingly, the decision to grant the request for the second reexamination is not an ultra vires action by the PTO, and the four catalogs must now be evaluated to determine whether they qualify as prior art and, if so, whether they serve to invalidate the '691 Patent.

*(iv) Facial Challenge to MPEP § 2240*

Plaintiff's final attempt to avoid the final agency action requirement of the APA is to contend that this case presents a facial challenge to MPEP § 2240. The relevant portion of this provision, entitled "Second or Subsequent Request Filed During Reexamination," states, in part, as follows:

> If a second or subsequent request for reexamination is filed (by any party) while a reexamination is pending, the presence of a substantial new question of patentability depends on the prior art cited by the second or subsequent requester. If the requester includes in the second or subsequent request prior art which raised a substantial new question in the pending reexamination, reexamination should generally be ordered.

MPEP § 2240. Plaintiff contends this provision is, on its face, contrary to § 303(a).

Courts have recognized that, in limited circumstances, a plaintiff making a facial challenge to agency rules or regulations need not "await a final agency action" or exhaust administrative remedies.[17] Relying on this authority, plaintiff contends that the PTO routinely grants requests for second reexaminations if a first request is still pending, regardless of whether a substantial new question of patentability is presented by the second request. This policy, plaintiff argues, is contrary to 35 U.S.C. § 303(a), as interpreted by the Federal Circuit in *Portola* and *Recreative Technologies*, because it authorizes the

---

17. *Patlex Corp., Inc. v. Mossinghoff*, 585 F.Supp. 713, 720 (E.D.Pa.1983) ("Federal courts are not required to await final agency action before considering facial challenges to new regulatory schemes."); *see Allegheny Ludlum Corp. v. Comer*, 24 U.S.P.Q.2d 1771, 1776 (W.D.Pa.1992) ("The exhaustion doctrine is inapplicable to such a challenge because to exhaust remedies that are in and of themselves the problem would be an exercise in futility.").

PTO to grant multiple reexamination requests based upon the same prior art.

■ Plaintiff's attempt to challenge MPEP § 2240 facially is unsuccessful. Initially, plaintiff's facial challenge is not properly at issue here because plaintiff's complaint does not include a cause of action that challenges the validity of MPEP § 2240. Moreover, even were plaintiff given leave to amend, the facial challenge would still fail because MPEP § 2240 was not applied in granting the '809 Reexamination. In fact, the only mention of MPEP § 2240 in the Director's denial of plaintiff's petition is in the context of refuting plaintiff's charge that the '809 Reexamination was brought for harassment purposes. Specifically, the Director noted that plaintiff has provided no evidence establishing that the purpose of the '809 Reexamination was to harass the patent owner. Thus, on its face, the order granting the '809 Reexamination did not rely on the portion of MPEP § 2240 that plaintiff contends violates 35 U.S.C. § 303(a). Moreover, it is clear that MPEP § 2240 is not at issue here because the '809 Reexamination was not ordered based on prior art still pending in the '275 Reexamination. As noted previously, the examiner withdrew the rejection of the '691 Patent because the record did not support a finding of whether the catalogs qualified as prior art. Thus, these four catalogs were, in essence, withdrawn from consideration and

therefore are not still pending in the '275 Reexamination. Accordingly, plaintiff lacks standing to challenge facially MPEP § 2240, because it was not relied on to grant the request for the '809 Reexamination.[18]

In sum, the APA's final agency action rule, embodied in § 704, bars judicial review of the PTO's intermediate decision to grant reexamination of a patent. And, no exception to that rule counsels otherwise in this case.[19]

### III.

Plaintiff's final challenge to the order granting the '809 Reexamination is that the request for the second reexamination was improper because it contained affidavits and declarations, which plaintiff contends are not permitted under 35 U.S.C. § 301. Plaintiff argues that reexaminations of patents are limited to a review of "prior art consisting of patents or printed publications." *In re Lanham*, 1 U.S.P.Q.2d 1877, 1878 (Com'r Pat. & Trademarks Oct.31, 1986). Accordingly, any other material submitted along with a reexamination request is prohibited.

■ This argument is unpersuasive; it misreads 35 U.S.C. § 301 which explicitly recognizes that a person requesting a reexamination can explain "in writing the pertinency and manner of applying such prior art,"[20] and this explanation is then

---

**18.** In any event, were plaintiff's facial challenge to the validity of MPEP § 2240 properly presented, it would nonetheless fail. As noted, MPEP § 2240 provides that a second reexamination request can be ordered if that request includes prior art that raises a substantial new question of patentability being considered in a *pending* reexamination. The justification for this regulation is clear. The PTO should grant a request for a second reexamination by a second or subsequent requester because no determination concerning the proffered prior art has been made in the first reexamination, and hence this prior art

continues to raise a substantial new question of patentability.

**19.** Because the final agency action requirement resolves the jurisdictional issue, it is not necessary to address the PTO's contention that the decision to institute a reexamination is committed to agency discretion, which is made unreviewable by APA § 701(a)(2).

**20.** Indeed, 35 U.S.C. § 302 requires that a request for reexamination set forth the pertinency and manner of applying the prior art to the patent at issue.

made "a part of the official file of the patent." 35 U.S.C. § 301; *see also* 35 U.S.C. § 302 (noting that a request for a reexamination must set forth the pertinency and manner of applying the prior art to the patent at issue). Further, MPEP § 2205 makes clear that this explanation "may ... include affidavits and declarations."[21] Because the affidavits and declarations submitted along with the request for the second reexamination were submitted to establish the date of the printed publications submitted, the examiner properly accepted these documents as explanations of the "pertinency and manner of applying such prior art." 35 U.S.C. § 301.[22]

### IV.

The result reached here is compelled by § 704 of the APA and fully consistent with the dictates of § 303(a) of the patent statute. The result is compelled by § 704 of the APA because the decision to grant the '809 Reexamination is not final agency action subject to judicial review, nor is any exception to that rule applicable here. And, the result is consistent with § 303(a) because the patent examiner did not rely on the four catalogs in determining the validity of the '691 Patent in the '275 Reexamination.

21. MPEP § 2205; *See, e.g., Total Containment, Inc. v. Environ Prods., Inc.,* 921 F.Supp. 1355, 1377 (E.D.Pa.1995) (noting that "[a]ny information that would help to establish the publication date ... of an alleged printed publication is material to the reexamination").

22. A different result might obtain if the documents did not relate to an explanation of the printed publications but rather to other issues of validity or enforceability. For example, in *Stewart Systems Inc. v. Commissioner of Patents and Trademarks,* 1 U.S.P.Q.2d 1879 (E.D.Va.1986), the plaintiff filed a request for reexamination, which included an alleged breach of the duty of candor. The court stated that this issue could not be considered

For these reasons, plaintiff's motion for a preliminary injunction must be denied, and defendant's motion to dismiss must be granted. Judgment will be entered in favor of defendant.

An appropriate Order will issue.

in the scope of a reexamination because reexaminations are limited to a review of patents and printed publications. *Id.* at 1880 (noting that "some factors that bear upon the question of validity will not be reached"). Accordingly, any affidavits or declarations that were submitted to support the breach of candor claim, as opposed to materials submitted to explain the pertinency of the patents and printed publications, must be excluded. Thus, pursuant to 35 U.S.C. §§ 301, 302, the patent examiner in this case properly considered the declarations and affidavits submitted because they help the examiner establish the date of publication of the four catalogs submitted.