# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2217

_____

County of Charles Mix,       *
      *
           Appellant,       *    Appeal from the United States
      *    District Court for the
v.       *    District of South Dakota.
      *
United States Department of the       *
Interior; Larry Echo Hawk, in his       *
official capacity as Assistant Secretary       *
of Indian Affairs; Michael Black, in his       *
official capacity as Regional Director,       *
Great Plains Region; Ben Kitto, in his       *
official capacity as Superintendent of       *
the Yankton Agency of the Bureau of       *
Indian Affairs,       *
      *
           Appellees.       *

_____

Submitted: March 14, 2012
Filed: April 6, 2012

_____

Before MURPHY and GRUENDER, Circuit Judges, and ROSS,[1] District Judge.

_____

MURPHY, Circuit Judge.

_____

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri, sitting by designation.

The Yankton Sioux Tribe requested that the Bureau of Indian Affairs (BIA) acquire 39 acres of land located in Charles Mix County, South Dakota in trust for the tribe pursuant to § 5 of the Indian Reorganization Act (the Act). The county and the state opposed this request. The BIA granted it, however, and that decision was affirmed by the Interior Board of Indian Appeals. The county then sued the United States Department of the Interior (the Secretary) in federal district court for injunctive and declaratory relief. It alleged that the acquisition of the land in trust was improper because § 5 of the Act is unconstitutional, the tribal committee which had requested the land be acquired in trust lacked the authority to do so, and the Secretary's decision to acquire the land was arbitrary and capricious. Each side moved for summary judgment, which the district court[2] granted to the Secretary. The county appeals, and we affirm.

## I.

Enacted in 1934, § 5 of the Act authorizes the Secretary of the Interior "in his discretion, to acquire . . . any interest in lands . . . within or without existing reservations . . . for the purpose of providing land for Indians." 25 U.S.C. § 465. It further provides that title to land acquired under the Act "shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands . . . shall be exempt from State and local taxation." Id.

The Secretary has promulgated regulations providing procedures and substantive criteria to govern his authority to acquire lands for Indians. See 25 C.F.R. pt. 151. These regulations provide that when an Indian tribe wants the United States to acquire land in trust, it must file a written request with the Secretary. Id. § 151.9. Upon receiving such a request, the Secretary provides notice to the state and local governments having regulatory jurisdiction over the land, giving them 30 days to

---

[2]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

provide written comments on the "acquisition's potential impacts on regulatory jurisdiction, real property taxes and special assessments." Id. § 151.10. An Indian tribe then has an opportunity to reply to the state and local governments' comments. Id. When deciding whether to acquire land in trust, the Secretary is to consider several factors, including the Indian tribe's need for additional land, the purposes for which the land will be used, any jurisdictional problems, potential conflicts of land use, the impact on state and local governments of removing the land from the tax rolls, and the capability of the BIA to discharge additional responsibilities resulting from the acquisition. Id.

The tribe purchased the 39 acre parcel of land at issue from private parties in 1992. The parcel, known as the travel plaza, is used for a gas station, convenience store, and agricultural leasing. In 2004 the tribe's Business and Claims Committee (the committee) passed a resolution asking the BIA to acquire the travel plaza in trust. The resolution indicated that if the travel plaza were taken into trust, the tribe would continue to use it for its existing purposes. In March 2004 the BIA superintendent for the area notified the county and the state of the tribe's request and invited their comments. Both the state and county submitted comments opposing acquisition of the travel plaza in trust.

In August 2004 the acting superintendent issued a decision letter approving the acquisition of the travel plaza in trust. The county and state appealed the decision to the regional director. See 25 C.F.R. §§ 2.2, 2.4(a). The acting regional director affirmed the acting superintendent's decision in May 2007 after evaluating the § 151.10 factors and determining that acquisition of the travel plaza in trust would provide for "economic development . . . for the Tribe," promote "tribal self-determination by allowing the Tribe to operate its own tribally-owned business on the subject lands," and help to "insure the survival of the Tribe as a sovereign nation by providing protected lands for their current and future generations." He also concluded that the acquisition would not complicate jurisdictional issues to the extent that they

-3-

already existed and that removal of the property from the tax rolls would have a minimal effect on the county and state governments. The county and state appealed this decision to the Interior Board of Indian Appeals. The Board affirmed in April 2009, concluding that the regional director had considered each of the relevant factors required by regulation and that his decision was a reasonable exercise of discretion. See 25 C.F.R. § 2.4(e); 43 C.F.R. § 4.331; South Dakota v. Acting Great Plains Reg'l Dir., 49 I.B.I.A. 129 (2009). The Board's decision constitutes the Secretary's final decision. 43 C.F.R. § 4.1(b)(1)(i).

The county then sought injunctive and declaratory relief against the Secretary in federal district court to prevent the transfer of the travel plaza into trust. The state did not join in the county's action which challenged the constitutionality of § 5 of the Act, the authority of the committee under tribal law to request that the travel plaza be taken into trust, and the Secretary's decision as arbitrary and capricious under the Administrative Procedure Act. The county also contended that its due process rights had been violated because it had not had access to the evidence relied on by the Secretary and the regional director was biased.

Both sides moved for summary judgment which the district court granted to the Secretary. The county appeals the adverse grant and argues that it is entitled to summary judgment.

II.

We begin by addressing the county's constitutional claims which are reviewed de novo. See Coal. for Fair & Equitable Regulation of Docks on Lake of the Ozarks v. Fed. Energy Regulatory Comm'n, 297 F.3d 771, 778 (8th Cir. 2002). The county first contends that § 5 of the Act violates the nondelegation doctrine. This doctrine provides that when delegating its own authority, Congress must provide "an intelligible principle to which the person or body authorized to [act] is directed to

-4-

conform." J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928). We have previously rejected an identical challenge to § 5, concluding that the phrase "for the purpose of providing land for Indians" supplies the necessary intelligible principle when viewed in the statutory and historical context of the Act. South Dakota v. U.S. Dep't of Interior (South Dakota II), 423 F.3d 790, 799 (8th Cir. 2005); see also South Dakota v. U.S. Dep't of Interior (South Dakota I), 69 F.3d 878, 886–89 (8th Cir. 1995) (Murphy, J., dissenting), vacated, 519 U.S. 919, 919 (1996). Because a panel of this court cannot overturn the decision of a previous panel, Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002) (per curiam), we decline the county's invitation to revisit the court's decision in South Dakota II.

We next turn to the county's argument that § 5 of the Act violates the Republican Guarantee Clause of the Constitution, which provides that the "United States shall guarantee to every State in this Union a Republican Form of Government." U.S. Const. art. IV, § 4. The Supreme Court has indicated that this clause protects "the right of the people to choose their own officers for governmental administration, and pass their own laws in virtue of the legislative power reposed in representative bodies." Duncan v. McCall, 139 U.S. 449, 461 (1891). The county contends that the Secretary has violated this clause by depriving it of the ability to tax the travel plaza. As the district court correctly concluded, however, this argument does not show how the Secretary's decision has in any way altered the form of the county's government or limited the ability of its citizens to elect their own representatives. We thus reject the county's challenge.

The county's final constitutional argument is that the Act violates the Tenth Amendment by allowing the Secretary to acquire off reservation land in trust. See U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."). It contends that none of Congress's powers under the Constitution give it authority to take off reservation land in trust for the Indians, and thus any such

power must be reserved to the states. The Secretary responds that § 5 does not implicate the Tenth Amendment because it is a proper exercise of Congress's powers under the Indian Commerce Clause and the Treaty Clause. U.S. Const. art. I, § 8, cl. 3 (Indian Commerce Clause); art. II, § 2, cl. 2 (Treaty Clause). He states that these clauses have been repeatedly interpreted as "grant[ing] Congress broad general powers to legislate in respect to Indian tribes, powers that we have consistently described as 'plenary and exclusive.'" United States v. Lara, 541 U.S. 193, 200 (2004) (citations omitted).

We need not address whether or not the Secretary's authority to acquire off reservation land in trust violates the Tenth Amendment because the land in question here does not fit into that category. The regulations governing the acquisition of land in trust differentiate between acquisitions of on reservation and off reservation land. Compare 25 C.F.R. § 151.10 (acquisition of on reservation lands) with 25 C.F.R. § 151.11 (acquisition of off reservation lands). The Secretary classified the travel plaza as on reservation land and applied the regulation governing such acquisitions. The county did not argue in the district court or in its briefing to this court that the Secretary erred in classifying the land as on reservation land.

Having considered the county's constitutional challenges, we turn to its contention that the Secretary lacked jurisdiction to consider the tribe's request because the committee exceeded its authority by requesting that the travel plaza be taken into trust. The county cites the tribe's amended bylaws, which provide that "[t]he Committee shall have the authority to investigate and transact all Tribal business of a routine nature." Amended By-Laws of the Yankton Sioux Tribal Bus. & Claims Comm. art. IV, § 1. It urges that requesting land be placed in trust is not "business of a routine nature."

The district court properly determined that it lacked jurisdiction to consider this claim. Our precedent make clear that the "[j]urisdiction to resolve internal tribal

-6-

disputes, interpret tribal constitutions and laws, and issue tribal membership determinations lies with Indian tribes and not in the district courts." In re Sac & Fox Tribe of Mississippi in Iowa / Meskwaki Casino Litig., 340 F.3d 749, 763 (8th Cir. 2003). Here, the county's requested relief would have required the district court to interpret tribal law to determine whether the committee had exceeded the authority provided it in the tribe's own bylaws. The district court correctly decided that it lacked jurisdiction to do that.

Finally, we must consider the county's argument that the Secretary's decision to acquire the land in trust was arbitrary and capricious under the Administrative Procedure Act. See 5 U.S.C. § 706(2)(A). When reviewing an agency's action "[w]e are to make a searching inquiry into the facts, examining the full administrative record, but we do not substitute our judgment for that of the agency." South Dakota II, 423 F.3d at 799 (citation omitted). We must ask whether the agency "articulate[d] a rational connection between the facts found and the choice made." Id. at 799 (citations and internal quotations omitted). The agency's determination will be upheld if it "is supportable on any rational basis." Voyageurs Nat. Park Ass'n v. Norton, 381 F.3d 759, 763 (8th Cir. 2004). The county contends that the Secretary improperly evaluated four of the factors he was required to consider under the regulations. See 25 C.F.R. § 151.10. We evaluate each in turn, keeping in mind that "we accord substantial deference to an agency's interpretation of its own regulation." South Dakota II, 423 F.3d at 799 (quotations omitted).

The county first argues that the Secretary failed to consider the tribe's need for additional land. See 25 C.F.R. § 151.10(b). This contention is belied by the record, which indicates that the Secretary explicitly addressed this factor. The acting regional director's analysis explained that acquiring the travel plaza in trust would help the tribe maintain its self sufficiency and self government, that it would help the tribe maintain cultural, social, and health programs by aiding economic growth through providing job opportunities, and that the tribal population had increased by 15 percent

over the previous 10 years with no increase in trust lands. The county replies that this reasoning fails to explain why the land must be held in trust as opposed to fee. Such analysis is not required by the regulations, and we have recognized that it would be "an unreasonable interpretation of [the regulation] to require the Secretary to detail specifically why trust status is more beneficial than fee status in the particular circumstance." South Dakota II, 423 F.3d at 801. Furthermore, the acting regional director did address the advantages of trust status, noting that it "may qualify the Tribe for additional federal funding" that would be unavailable if the land were held in fee.

The county next contends that the Secretary did not properly analyze the impact of the travel plaza's removal from the county's tax rolls. See 25 C.F.R. § 151.10(e). In fact the acting regional director's decision letter considered the magnitude of the lost revenue, noting that the $6,260.10 in annual tax revenue which would be lost was insignificant in comparison to the county's total annual tax budget of nearly $2.75 million. He also recognized that some of the lost revenue could be offset. That is because after the transfer into trust, the BIA or the tribe would provide services to the travel plaza that had previously been provided by the county. The county urges that the acting regional director should have looked at the cumulative effect of the loss in tax revenue from all parcels of land within the county that are held in trust. The regulation does not require this type of cumulative analysis, however. See id. Moreover, the Secretary, to whose interpretation we must give deference, see South Dakota II, 423 F.3d at 799, has repeatedly taken the position that such cumulative analysis is not needed. See, e.g., Shawano Cnty., Wis. v. Midwest Reg'l Dir., 40 I.B.I.A. 241, 249 (2005).

The county's final arguments are that the Secretary failed adequately to address jurisdictional and land use problems and that he did not consider whether the BIA was equipped to handle additional responsibilities that would arise from holding the land in trust. See 25 C.F.R. § 151.10(f), (g). The record does not support the county's contentions on these points. The regional director determined that conflicts of land

-8-

use were unlikely to arise because the tribe's usage of the travel plaza would not change after it was placed in trust. He also noted that the addition of another piece of property in trust would not introduce any new jurisdictional problems. As to the BIA's ability to handle the acquisition, the decision noted that the Bureau already provided support to trust lands in the county and that Indian health and law enforcement services were both available within a 10 minute response time. In short, the administrative record indicates that contrary to the county's assertions, the Secretary thoroughly considered all of the necessary factors when deciding to acquire the travel plaza in trust.

## III.

Accordingly, we affirm the judgment of the district court.

_____