**VERSATA DEVELOPMENT CORP., Plaintiff,**

v.

**Teresa Stanek REA, Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office, Defendant,**

**SAP America, Inc. & SAP AG, Defendant–Intervenors.**

**Case No. 1:13–cv–328 (GBL/IDD).**

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 7, 2013.

Robert Danny Huntington, Martin Moss Zoltick, Rothwell Figg Ernst & Manbeck, Washington, DC, for Plaintiff.

Neil H. MacBride, U.S. Attorney, Dennis C. Barghaan, Jr., Assistant U.S. Attorney, William LaMarca and Joseph Matal, Associate Solicitors, United States Patent and Trademark Office, Alexandria, VA, for Defendant.

Elizabeth Diane Ferrill, Finnegan Henderson Farabow Garrett & Dunner LLP, Washington, DC, for Defendant–Intervenors.

### MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendant Teresa Stanek Rea's and Intervenors SAP America, Inc. and SAP AG's Motions to Dismiss for lack of subject matter jurisdiction. (Docs. 16, 39.) This case concerns the claims of Versata Development Group, Inc., by virtue of the Administrative Procedure Act ("APA"), that the United States Patent and Trademark Office ("PTO"), through its Patent Trial and Appeal Board ("PTAB"), wrongly instituted post-grant review of Plaintiff's claimed patent based on an improper interpretation of the America Invents Act ("AIA"). The ultimate question here is whether a party whose patent is being reevaluated under the AIA is entitled to judicial review of the agency decision to

initiate a post-grant review and reevaluate patent eligibility. There are two issues before the Court.

The first issue is whether the AIA precludes judicial review of the PTAB's decision to institute post-grant review in accordance with the AIA. The Court holds that it lacks subject matter jurisdiction over Plaintiff's claim because the AIA's express language, detailed structure and scheme for administrative and judicial review, legislative purpose, and nature of the administrative action evince Congress's clear intent to preclude subject matter jurisdiction over the PTAB's decision to institute patent reexamination proceedings. Therefore, Plaintiff's claims are dismissed for want of subject matter jurisdiction under the clear statutory guidance provided by the AIA.

The second issue is whether the PTAB's statutory interpretation regarding institution of post-grant review proceedings constituted a "final agency action" for which there is no other adequate remedy in a court, thereby providing Plaintiff a cause of action to bring challenge to such decision in this Court. The Court holds that the decision to institute post-grant review is merely an initial step in the PTAB's process to resolve the ultimate question of patent validity, not a final agency action as contemplated by 5 U.S.C. § 704. The decision to institute patent reexamination proceedings is not the consummation of an agency's decision making process, nor does it elicit rights or obligations, and Plaintiff retains an alternative adequate remedy through appeal to the Court of Appeals for the Federal Circuit. Therefore, as an alternative ground for dismissal, Plaintiff's challenge to the PTAB's decision to institute post-grant review is dismissed for failure to state a claim.

## I. BACKGROUND

This matter arises generally from a patent infringement dispute between Plaintiff Versata Development Group, Inc. ("Versata") and Intervenors SAP America, Inc. and SAP AG (collectively "SAP"). Versata and SAP were involved in separate litigation arising out of Versata's claims of patent infringement by SAP concerning United States Patent No. 6,553,350 ("the '350 patent"), entitled "Method and Apparatus for Pricing Products in Multi–Level Produce and Organizational Groups." Those proceedings resulted in a jury verdict for Versata and against SAP, which the Federal Circuit recently affirmed.

Pursuant to the recently-enacted Leahy–Smith America Invents Act ("AIA"), Pub.L. No. 112–29, § 18, 125 Stat. 284, 329, 31 (2011), SAP filed a separate petition with the PTAB, arguing essentially that Versata's '350 patent constituted a "covered business method" and was therefore not patentable subject matter. Upon consideration of written arguments by both Versata and SAP, the PTAB issued a lengthy opinion instituting a post-grant review of Versata's '350 patent. The PTAB's post-grant review proceedings have included discovery, expert witnesses, and oral hearings. Versata filed the instant action prior to the PTAB's issuance of its final decision to ask this Court to conduct an interlocutory review of the PTAB's decision to institute post-grant review proceedings.

### The Underlying Patent Dispute

Versata initiated a lawsuit against SAP in 2007 in the United States District Court for the Eastern District of Texas alleging, *inter alia*, SAP's infringement of Versata's '350 patent. (Compl. ¶ 13, Doc. 1.) A jury found for Versata and against SAP by finding that (1) SAP had not proven Versata's claims of the '350 patent were invalid and (2) that SAP infringed on Versata's

patent. (*Id.* ¶ 15.) SAP issued a software patch in order to eliminate future infringement, but after Versata again sued SAP for continued infringement, a second jury found that SAP continued to infringe and awarded Versata a judgment of $345 million. (*Id.* ¶ 16.) The district court upheld SAP's liability on September 9, 2011 and awarded interest and a permanent injunction against SAP's future infringement. (*Id.* ¶ 17.) On May 1, 2013, the Federal Circuit affirmed the district court's judgment on liability and damages but remanded as to the scope of the injunction. *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed.Cir.2013). On May 31, 2013, SAP filed a motion for rehearing and rehearing *en banc.* (Pl.'s Opp'n Mot. Dismiss at 2, Doc. 33.)

On September 16, 2011, just seven days after the district court's finding of SAP's continued infringement, Congress enacted several reforms to the Patent Act through the AIA. *See* Pub.L. No. 112–29, § 18, 125 Stat. at 329, 331. The AIA sought, among other things, to make additional efforts to limit federal court litigation over the validity of issued patents by empowering the PTO to respond directly to the perception that many patents issued in the late 1990's and early 2000's were unpatentable. (*See* Def.'s Mem. Supp. Mot. Dismiss at 5, Doc 18 (quoting H.R.Rep. No. 106–464, at 133 (1999) (Conf. Rep.)); Intervenors' Mem. Supp. Mot. Dismiss at 2, Doc. 40.) In enacting the AIA, Congress noted that despite its multiple previous attempts to streamline issued patent review, parties continued to largely rely upon federal district courts to avoid the lengthy and costly procedure that resulted from PTO review. (Def.'s Mem. Supp. Mot. Dismiss at 5–6 (quoting H.R.Rep. No. 112–98, at 45 (2011) (Conf. Rep.)).)

The AIA created two types of PTO administrative review. First, post-grant review permits any party to request PTO review of an issued patent within the first nine months of patent issuance. *See* 35 U.S.C. §§ 321–35 (2013). Second, *inter partes* review, available only under more limited circumstances, provides for PTO review of an issued patent beyond nine months from patent issuance or after termination of post-grant review proceedings. *See id.* § 311(b). *Inter partes* review requires that a challenge to patentability must relate to a ground that could have been brought under the "prior art" provisions of 35 U.S.C. §§ 102–03.

Although post-grant review is generally available only within the first nine months, in order to address the many patents issued in the late 1990's and early 2000's that spurred Congress's concern, Congress created an exception for "business method" patents. *See* H.R.Rep. No. 112–98, at 54, 2011 U.S.C.C.A.N. 67, 84. So long as the party seeking reexamination of the patent "has been sued for infringement of the patent or has been charged with infringement under th[e] patent," Congress would allow reexamination despite going beyond the general nine-month window. Pub.L. No. 112–29, § 18(a)(1)(B), 125 Stat. at 329.

In accordance with the recently-enacted AIA, prior to the Federal Circuit's ruling on SAP's appeal, and pursuant to the exception for "business method" patents, SAP filed for post-grant review of Versata's '350 patent, arguing that the claims constituted a "covered business method" under Section 18 of the AIA. (Compl. ¶ 20.) Versata filed a response to that petition as accorded by 35 U.S.C. § 323, in which it argued that its '350 patent was not a "covered business method" and that review of the '350 patent should be unavailable in post-grant proceedings. (*See* Def.'s Ex. B (Versata's Preliminary Response to PTAB) at ii, 10–45, 68–80, Doc. 18–2.)

On January 9, 2013, after consideration of Versata's and SAP's submissions, the PTAB ultimately granted SAP's request for post-grant review of the '350 patent under 35 U.S.C. § 324 and issued a forty-four page opinion explaining that decision. (*See* Def.'s Ex. D (Institution of Covered Business Method Review), Doc. 18–4.) The PTAB's proceedings concluded in April 2013, and a final decision had not been issued at the time of the filing of this matter. (Def.'s Mem. Supp. Mot. Dismiss at 11.) On June 11, 2013, the PTAB issued its final written decision, holding claims 17 and 26–29 of Versata's '350 patent unpatentable under Section 101. (Pl.'s Opp'n Mot. Dismiss at 4; Pl's Ex. 4 (PTAB Final Written Decision) at 2, Doc. 33–4.)

**The Current Litigation**

Versata filed the instant action on March 13, 2013, requesting this Court conduct interlocutory review of the PTAB's decision to initiate post-grant review of the '350 patent under the APA. (Compl. ¶¶ 40–57.) The Court granted SAP's Motion to Intervene under Federal Rule of Civil Procedure 24(b) on June 24, 2013. (*See* Doc. 34.) Defendant's and Intervenors' instant Motions to Dismiss argue that judicial review of the PTAB's action is precluded by the AIA and, alternatively, that the Complaint fails to state a claim because the decision to institute post-grant review is not a proper type of agency decision ripe for judicial consideration.

## II. STANDARDS OF REVIEW

### A. 12(b)(1) Standard of Review

▮ Federal Rule of Civil Procedure 12(b)(1) enables a party to move for dismissal by challenging the Court's jurisdiction over a subject matter. Fed.R.Civ.P. 12(b)(1). A court must dismiss a case where the court finds subject matter jurisdiction lacking. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Jones v. Calvert*

*Grp., Ltd.,* 551 F.3d 297, 301 (4th Cir.2009) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). A plaintiff bears the burden of proof for establishing that federal subject matter jurisdiction is proper. *Warren v. Sessoms & Rogers, P.A.,* 676 F.3d 365, 371 (4th Cir.2012) (citing *U.S. ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 347 (4th Cir.2009)).

▮ A defendant may assert that the complaint fails to allege facts upon which federal subject matter jurisdiction could be based. *See Kerns v. United States,* 585 F.3d 187, 192 (4th Cir.2009) (quoting *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982)). In this scenario, a court must assume the veracity of claims by the plaintiff. *Id.* (quoting *Bain,* 697 F.2d at 1219). Alternatively, a defendant may assert that federal subject matter jurisdiction does not exist notwithstanding any specific allegations in the complaint. *Id.* In this situation, a court may consider evidence outside the pleadings in order to determine whether subject matter jurisdiction exists. *Id.; Velasco v. Gov't of Indonesia,* 370 F.3d 392, 398 (4th Cir.2004). Accordingly, the plaintiff's allegations will not receive a blanket presumption of truth, and a dispute of material fact will not prevent a court from evaluating the claims underlying jurisdiction. *Vuyyuru,* 555 F.3d at 347.

### B. 12(b)(6) Standard of Review

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to move for dismissal by challenging the sufficiency of the plaintiff's complaint. Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion should be granted where a plaintiff has failed to "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir.2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009)) (internal quotation marks omitted). To be facially plausible, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 554 (4th Cir.2013) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937) (internal quotation marks omitted). In order to survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "nudg[e] [the] claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.,* 708 F.3d 527, 543 (4th Cir.2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (internal quotation marks omitted). The requirement for plausibility does not mandate a showing of probability but merely that there is more than a mere possibility of the defendant's unlawful acts. *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir.2009) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). As a result, a complaint must contain more than "naked assertions" and "unadorned conclusory allegations" and requires some "factual enhancement" in order to be sufficient. *Id.* (citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 and *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

In considering a Rule 12(b)(6) motion, a court must give all reasonable inferences to the plaintiff and accept all factual allegations as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir.2011) (citations omitted). A court should also consider documents beyond the complaint including any "documents incorporated into the complaint by reference." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.,* 576 F.3d 172, 176 (4th Cir.2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)). A court is not bound to accept as true any bare legal conclusions, whether contained in the complaint or the incorporated documents. *Burnette v. Fahey,* 687 F.3d 171, 180 (4th Cir.2012) (citing *Aziz v. Alcolac, Inc.,* 658 F.3d 388, 391 (4th Cir. 2011)). The court's 12(b)(6) review involves separating factual allegations from legal conclusions, and a court must grant a 12(b)(6) motion where a complaint fails to provide sufficient non-conclusory factual allegations to allow the court to draw the reasonable inference of the defendant's liability. *See Burnette,* 687 F.3d at 180; *Giacomelli,* 588 F.3d at 196–97 (citing *Iqbal,* 556 U.S. at 678–79, 129 S.Ct. 1937 and *Gooden v. Howard Cnty., Md.,* 954 F.2d 960, 969–70 (4th Cir.1992) (en banc)).

### III. DISCUSSION

The Court grants Defendant's and Intervenors' Motions to Dismiss for two reasons. First, the Court concludes that it lacks subject matter jurisdiction because the AIA precludes judicial review. Specifically, the AIA's express language and its detailed scheme for administrative and judicial review evince Congress's clear intent to preclude subject matter jurisdiction in federal district court. Second, as an alternative ground, the Court finds that Plaintiff fails to state a claim because the institution of post-grant review is not a final agency action for which Plaintiff lacks an alternative adequate remedy in a court. The decision to institute post-grant review is merely an initial step with any legal rights or obligations to follow at a later stage, and Plaintiff maintains the opportunity to make a direct appeal of the PTAB's decision to the Federal Circuit.

### A. The AIA Precludes Judicial Review

■ The Court holds that it lacks subject matter jurisdiction over Plaintiff's

claim for interlocutory judgment because the AIA expressly precludes judicial review of the decision to institute post-grant review proceedings.

Congress clearly indicated its intent that AIA administrative procedures should preclude district court intervention. The APA provides, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, the APA excepts the availability of judicial review for situations where statutes preclude judicial review. 5 U.S.C. § 701(a)(1). Furthermore, judicial review of a final agency action is only authorized where "there is no other adequate remedy in a court." 5 U.S.C. § 704.

Determining whether a statute precludes judicial review requires evaluation of the statute's "express language, the structure of the statutory scheme, its legislative history and purpose, and the nature of the administrative action involved." *See Pregis Corp. v. Kappos*, 700 F.3d 1348, 1357–58 (Fed.Cir.2012) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984)). As Plaintiff correctly asserts, "[t]here is a 'strong presumption' that Congress did not intend to prohibit all judicial review of a type of agency action." *Id.* at 1358 (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 672, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986)). However, where congressional intent is "fairly discernible in the statutory scheme," judicial review may be precluded despite this strong presumption. *Id.* (quoting *Block*, 467 U.S. at 351, 104 S.Ct. 2450); *see also Block*, 467 U.S. at 349, 104 S.Ct. 2450 (finding that "when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the be-

hest of other persons may be found to be impliedly precluded"). Courts find the requisite congressional intent through "specific language or specific legislative history that is a reliable indicator of congressional intent" and by "inferences of intent drawn from the statutory scheme as a whole." *Block*, 467 U.S. at 349, 104 S.Ct. 2450 (citations omitted). That congressional intent need only be "fairly discernible in the statutory scheme" means that the preclusion of judicial review need not require fulfillment of a strict "clear and convincing evidence" standard. *Id.* at 351, 104 S.Ct. 2450 (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 157, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)).

There are three ways by which the AIA evinces clear congressional intent to preclude actions that seek judicial intervention under the APA for reexamination proceedings. First, the express language of the statute indicates Congress's intent to preclude judicial review of a PTAB decision to institute post-grant proceedings. Section 324(e) states, "[t]he determination by the Director whether to institute a post-grant review under this section shall be final and nonappealable." 35 U.S.C. § 324(e). Despite Plaintiff's assertion to the contrary, there is no indication that Congress intended for this language to refer only to the non-availability of direct appeal to the Federal Circuit and not to an interlocutory appeal to a district court.

Second, Chapter 32 provides detailed procedures for post-grant review and a detailed scheme for administrative and judicial review of those post-grant review proceedings. *See* 35 U.S.C. §§ 322–329 (describing post-grant review requirements as follows: filing of the initial petition (§ 322), patent owner's right to file preliminary response (§ 323), threshold requirements for institution of post-grant review (§ 324), relation to other proceedings

or actions (§ 325), conduct of post-grant review (§ 326), termination of post-grant review in the event of settlement (§ 327), Board actions related to the final decision (§ 328), and right to appeal (§ 329)).

Third, the AIA dictates the court in which a disappointed party may appeal the PTAB decision, demonstrating Congress's intent to cabin the forums for challenging post-grant review determinations. This scheme and intent precludes federal district court jurisdiction under the APA. *See Pregis,* 700 F.3d at 1359 ("That the Patent Act dictates the courts in which a disappointed applicant may appeal a patentability determination also shows Congress intended to preclude challenges to such PTO actions under the APA."); *see also* 35 U.S.C. § 141(c) ("A party to ... a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board under section ... 328(a) ... may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit."); 35 U.S.C. § 329 ("A party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 328(a) may appeal the decision pursuant to sections 141 through 144. Any party to the post-grant review shall have the right to be a party to the appeal.").

Seeking judicial review of agency action, Versata appeals the decision to institute post-grant review, arguing that judicial intervention by this Court is permissible for three reasons. The first reason is that the "final and non-appealable" language of the statute demonstrates only that the decision to institute post-grant review is not directly *appealable* to the Federal Circuit; the language does not indicate that the decision is not *reviewable* by a district court under the APA. Essentially, this argument seeks to draw a distinction between an "appeal" to a court and a "review" by a court. Second, Versata contends that only

the substantive decision as to whether at least one claim was more likely than not unpatentable would be immune from immediate appeal to the Federal Circuit. Thus, Versata argues, other decisions related to the process of instituting the post-grant review, including the pertinent issue of the initiation decision, are not necessarily beyond the purview of the Court's jurisdiction. Third, Versata maintains that courts interpreting the *inter partes* examination statute rejected the view that all determinations involved in a decision to award post-grant review are not reviewable by district courts. Accordingly, Versata argues, the Court should construe the AIA language concerning post-grant review in a manner consistent with that of *inter partes* review and find that the language precluding appeal only addresses the final substantive determination by the PTAB.

■ Plaintiffs first argument fails on the plain meaning of "appeal" as it relates to judicial review of agency action. Federal courts serve as an appeal of agency action under the APA. *See Maxey v. Kadrovach,* 890 F.2d 73, 77 (8th Cir.1989) ("A federal court is confined to the administrative record in deciding any appeal under the APA."); *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1580 (10th Cir.1994) ("Reviews of agency action [under the APA] in the district courts must be processed as appeals."); *Cnty. of Charles Mix v. Dep't of Interior,* 799 F.Supp.2d 1027, 1035 (D.S.D.2011) ("This case involves an appeal under the APA."), *aff'd,* 674 F.3d 898 (8th Cir.2012). Additionally, Defendant cites several statutory examples where the word "appealable" is equated with "review," including within the Patent Act itself. *See* 20 U.S.C. § 107d–2(a); 25 U.S.C. § 2713(c); 35 U.S.C. § 154(b)(4)(A). Despite its assertion that there is a relevant distinction here between "appeal" and

"review," the cases upon which Versata relies cannot refute that this Court's interlocutory review of the PTAB's decision to institute post-grant review would serve as an appeal of that agency's decision. Thus, at least for the purposes of judicial consideration of an agency decision, no distinction is to be drawn between an "appeal" and a "review."

The Court remains unconvinced by Plaintiff's argument that the statutory language indicates that only the Director's substantive determination is final and non-appealable but that interlocutory review of other sections, namely Sections 18(d) and 321(b), is not precluded under that wording. The Court rejects such an argument in light of a complete reading of the APA and its amendments under the AIA that alter the language defining what decisions are subject to appeal. Furthermore, even if the Court accepted Versata's argument that Section 324(e) is only intended to limit direct appeal of the Director's substantive determination, this cannot undermine the overarching congressional intent to streamline administrative review; minimize lengthy, costly, and protracted federal litigation; and outweigh the final section of the chapter detailing procedures for appeal. Indeed, it would be implausible to think that Congress intended Section 324(e) to be inversely implied to other parts of the act when the final section of the act, Section 329, expressly addresses the appropriate avenue for appeal. The Court finds that the ordinary reading of the statute prevails. The statutory framework makes clear that the reviewable decision is the Board's final written decision and not the Board's threshold decision to institute post-grant review.

Comparing the original statute with the AIA makes plain that Congress intended to limit the appealability of the decision to institute post-grant review related to any of the factors making up that determina-

tion. Statutory amendments are indicative of congressional intent, thus the material differences in the statutory language before and after the passage of the AIA necessitate the conclusion that Congress intended a different meaning in the amended statute. *See Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir.1995) (holding that a substantive change brought about by statutory amendment demonstrated congressional intent that the amended statute bear different meaning than the prior version (citing *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1444 (D.C.Cir. 1988))). The pre-AIA wording of the "final and non-appealable" provision related only to the Director's determination. *See* 35 U.S.C. § 312 (2010) ("A determination by the director *under subsection (a)* shall be final and non-appealable.") (emphasis added). Conversely, the AIA language broadens the application of "final and non-appealable" to the decision whether to institute post-grant review under the entire section. *See* 35 U.S.C. § 324(e) ("The determination by the Director whether to institute a post-grant review *under this section* shall be final and nonappealable.") (emphasis added). Based on the clear difference in the amended language, Congress intended that the PTAB's determinations regarding its decision to institute post-grant review would be final and non-appealable. *Cf. Nalley*, 53 F.3d at 652 ("[W]hen the change in the language of the relevant provision ... is clear, the plain meaning of this amendment should be considered conclusive, except in the rare case in which the literal application of the statute will provide a result demonstrably at odds with congressional intent." (citing *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989))).

The Court also finds unpersuasive Plaintiff's third argument, which claims that courts interpreting the *inter partes* exami-

nation statute rejected the view that all determinations involved in a decision to award post-grant review are not reviewable by the courts. In *Callaway Golf Company v. Kappos*, 802 F.Supp.2d 678 (E.D.Va.2011), the PTO denied a petition to vacate *inter partes* reexaminations. Finding jurisdiction to review the denial, this Court explained that "[t]he statute does not divest the courts of jurisdiction over all decisions related to *inter partes* reexaminations." *Id.* at 685. Plaintiffs argument appears to be that if Section 324(e) "only exempts from judicial review the PTO's substantive determination that a reexamination application raises a substantial new question of patentability," then the Court is not divested of its ability to conduct an interlocutory review of the PTO's interpretation and application of "covered business methods." *See id.* (internal quotation marks and citation omitted).

The Court disagrees with Plaintiff's argument and declines to follow the holding in *Callaway*. In addition to the fact that decisions of district courts, even this Court, are persuasive and perhaps instructive but not binding, *Callaway* is especially distinguishable because the Court's conclusion in that case relied upon a statute that differs from and predates the passage of the AIA, which controls this matter. As noted above, in *Callaway* the Court found jurisdiction to examine the decision of whether the PTO properly denied a petition to vacate an *inter partes* reexamination. *Id.* However, the statute at issue, formerly codified at Section 312, stated that the Director's determination on patentability questions was not reviewable. *See* 35 U.S.C. § 312(c) (2010) (declaring as nonappealable the Director's determination upon reexamination as defined by § 312(a)). Accordingly, this Court held in *Callaway* that, under the controlling language, Section 312(c) could not be read to preclude review of non-substantive matters

related to reexamination. 802 F.Supp.2d at 685. While it may possible, upon first glance, to draw similarities between *Callaway's* disposition and Versata's claim in the instant case due to the issue of a PTO decision regarding reexamination, the AIA provides the Court with substantially more context and congressional intent with which to answer the instant jurisdictional question. The current language, as modified by the AIA, in setting forth the structure and procedure of post-grant review, explicitly removes from judicial scrutiny the determination of whether to initiate the post-grant review. 35 U.S.C. § 324(e). The difference in the governing statutory language undoubtedly demonstrates Congress's intent to preclude judicial review of this nonsubstantive decision in a manner not evident by the language at issue in *Callaway*. Accordingly, *Callaway* is plainly distinguishable, as its conclusion, based upon issues governed by a statute lacking the language currently at issue, cannot persuade the Court to adopt Plaintiff's position.

The parties do not appear to dispute that streamlining and judicial efficiency are at least part of the congressional intent with passage of the AIA. The dispute lies at the determination of how much weight the congressional interest in efficiency deserves. Plaintiff asserts that the argument against jurisdiction is akin to immunity from judicial scrutiny in all instances. (Pl.'s Opp'n Mot. Dismiss at 11.) On the contrary, the jurisdictional argument here is that the PTO's decision whether to institute post-grant review is insulated from judicial scrutiny, not that the entire process is without judicial remedy. Indeed, judicial review is provided at the Federal Circuit upon issuance of the final decision.

Plaintiff's argument that the presumption toward judicial review cannot bow to the congressional goals of efficiency and

streamlining is incorrect. As stated above, the AIA sought to make additional efforts to limit federal court litigation on "the expectation that [the PTO] would serve as an effective and efficient alternative to often costly and protracted district court litigation." H.R.Rep. No. 112–98, at 45 (2011), 2011 U.S.C.C.A.N. 67, 76 (Conf. Rep.). As is the case with any other presumptions applicable to statutory interpretation, "[t]he presumption favoring judicial review ... may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." *Block*, 467 U.S. at 349, 104 S.Ct. 2450. Given the clear and undisputed indication that Congress passed the AIA with the goal of efficiency and streamlining of post-grant patent reexamination, the presumption toward judicial review is overcome here. Finding jurisdiction in the instant case would sanction a parallel court proceeding under the APA against express congressional intent made evident by the AIA's passage. Furthermore, the statute already provides for direct appeal to the Federal Circuit upon the conclusion of the post-grant review proceedings, thus providing a remedy for parties dissatisfied with the PTAB's decision.

Therefore, the Court finds Plaintiff's claims are barred for lack of subject matter jurisdiction because the language and congressional intent of recent amendments to the APA preclude the Court from exercising jurisdiction where the statutory scheme provides for administrative jurisdiction of the PTO and a direct appeal to the Federal Circuit.

## B. Instituting Post–Grant Review is Not Ripe for Interlocutory Review

Alternatively, if the AIA does not preclude judicial review, the Court grants Defendant's and Intervenors' Motions to Dismiss and holds that Plaintiff has failed to state a claim for interlocutory judgment because the PTO's determination to institute post-grant review is not a final agency action for which there is no adequate remedy in a court.

■ Whether Plaintiff has sufficiently pleaded that Defendant's decision constitutes a "final agency action" is not a question of jurisdiction but is more appropriately disposed of under Rule 12(b)(6). The APA does not confer jurisdiction upon federal courts. *See Air Courier Conference of Am. v. Am. Postal Workers' Union*, 498 U.S. 517, 523 n. 3, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991) (noting that "[t]he judicial review provisions of the APA are not jurisdictional"). "[T]he jurisdictional source for an action under the APA is [28 U.S.C. § 1331] ... [and] [t]he judicial review provisions of the APA ... simply provide 'a limited cause of action for parties adversely affected by agency action.'" *Lee v. U.S. Citizenship & Immigration Serv.*, 592 F.3d 612, 619 (4th Cir.2010) (citing *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185 (D.C.Cir.2006)).

The PTAB's decision to institute post-grant review is not made reviewable by statute; only the final written determination is made reviewable by the Federal Circuit under 35 U.S.C. § 329. "The APA authorizes interlocutory judicial review only where the agency action is made reviewable by statute or where there is a 'final agency action for which there is no other adequate remedy in a court.'" *Pregis*, 700 F.3d at 1359 (quoting 5 U.S.C. § 704). Thus, because this claim is not made reviewable by statute, for Plaintiff to state a claim under the APA, the Court considers whether (1) the decision to initiate a post-grant review amounts to a final agency action and (2) Plaintiff has other adequate remedies.

### 1. Final Agency Action

■ Appeals under the APA are limited only to agency decisions or actions that

are final. *See* 5 U.S.C. § 704. As this Court noted in *Heinl v. Godici*, 143 F.Supp.2d 593 (E.D.Va.2001), "[j]udicial review prior to a final determination by an agency is likely to interfere with the 'proper functioning of [an] agency and [create] a burden for the courts.'" *Id.* at 597 (quoting *Fed. Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 242, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)). The basic intent behind the rule limiting review to final decisions with no adequate remedy in court "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 597 n. 8 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). Thus, interlocutory review of the PTAB's decision to institute post-grant review would at minimum be piecemeal and potentially unnecessary in lieu of the PTAB's ultimate decision. *Id.* (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) and *McGee v. United States*, 402 U.S. 479, 484, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971)).

▇ Two conditions must be met in order for a decision to be considered a "final agency action" under the requirements of Section 704. First, the agency action must be the "consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). In other words, the decision "must not be of a merely tentative or interlocutory nature." *Id.* Second, the action must result in the determination of legal rights or obligations "from which legal consequences will flow." *Id.*

▇ The challenged decision here—institution of a post-grant review—is not the consummation of the PTO's decisionmaking process; rather, it is the commencement of it. In *Heinl*, this Court held that "the PTO's decision to allow reexamination of a patent is not 'final agency action' and, therefore, is not subject to judicial review at this time." 143 F.Supp.2d at 597. A decision to conduct a reexamination is "an intermediate, indeed initial, step in the agency process to resolve the question of the validity of a patent." *Id.* The *Heinl* court drew a further analogy to the Supreme Court's decision in *Standard Oil*, noting that the decision to reexamine a patent merely initiates an administrative process analogous to the issuance of a complaint, which the Supreme Court found to be "merely 'a determination that adjudicatory proceedings will commence.'" *Id.* at 597 n. 9 (quoting *Standard Oil*, 449 U.S. at 241, 101 S.Ct. 488). The present case demonstrates the logic in this analogy when one considers that opportunity remains for the patent owner to prevail even after the decision to institute post-grant review has been made. Upon consideration of supplemental information, evidence revealed through discovery, oral hearings, and written comments, the PTAB could find in the patent owner's favor. Indeed, "[a] decision confirming the patent's validity renders moot the question whether the reexamination petition should have been granted." *Id.* at 598. Furthermore, post-grant review proceedings are terminated in the event of settlement between the parties, save for the circumstance where the PTAB has already decided the merits prior to receiving the request for termination. 35 U.S.C. § 327(a). All of this indicates that the institution of post-grant review is merely an initial step. Consummation of a process does not occur where the process allows for additional events that can alter preliminary decisions.

The decision to institute post-grant review similarly does not result in the determination of legal rights or obligations "from which legal consequences will flow." *Bennett,* 520 U.S. at 177–78, 117 S.Ct. 1154. The decision must have a direct and immediate effect on the party's legal rights. *See, e.g., Wollman v. Geren,* 603 F.Supp.2d 879, 885 (E.D.Va.2009) (stating that in order to be "final," legal rights or consequences under the APA "generally have an immediate legal impact on the party"); *cf. NRDC v. EPA,* 16 F.3d 1395, 1407 (4th Cir.1993) (asserting legal rights or obligations possess "the status of law" and create a "direct impact on the day-to-day business of [the] plaintiff"). Furthermore, the Supreme Court has long held that although the practical requirement to participate in post-grant review proceedings may be a substantial burden, "it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *Standard Oil,* 449 U.S. at 242, 101 S.Ct. 488 (noting that issuance of the complaint is not a final agency action despite mandating involvement in litigation). The decision to institute post-grant review is the first step of the process wherein the legal rights and remedies will ultimately be determined.

Plaintiff presents three arguments in support of its overarching position that the PTO's construction and interpretation of the statute constitutes a final agency action ripe for judicial review. First is that the PTO's position on the statutory interpretation created a final and direct harm on Plaintiff, not merely a preliminary harm. Second, Versata claims that Defendant's adoption of this similar interpretation with respect to other post-grant reviews belies that the determination is not a final agency action. Finally, Versata argues in the alternative that even if the construction is not final, it is still reviewable as a pure question of law.

Plaintiff's argument that the statutory interpretation was an insulated and independent final action is simply contrary to precedent. As noted in *Standard Oil* and its progeny, even an authoritative statutory interpretation is not final, as it does not affect legal rights or obligations as discussed above. Even if the PTAB's interpretation were wrong, that interpretation does not bring with it a direct and immediate effect on the party's legal rights. *See NRDC v. EPA,* 16 F.3d at 1407; *Wollman,* 603 F.Supp.2d at 885. Furthermore, the finality of the statutory interpretation is only part of the inquiry. Plaintiff's argument fails to demonstrate that the interpretation results in the determination of legal rights or obligations "from which legal consequences will flow." *Bennett,* 520 U.S. at 177–78, 117 S.Ct. 1154. As to Plaintiff's second argument on this issue, whether or not the PTO continues to utilize the statutory interpretation identically with respect to other parties has no bearing on the finality of the agency determination on the legal rights and obligations of Plaintiff.

In its final argument, Plaintiff attempts to circumvent the "final agency action" rule by asserting that Defendant's statutory construction is a pure question of law. However, this argument is merely an attack on the agency's jurisdiction. *See Veldhoen v. U.S. Coast Guard,* 35 F.3d 222, 225 (5th Cir.1994) ("An agency's decision to initiate proceedings does not become final merely because the challenger attacks the agency's jurisdiction, even where the attacks raise[ ] a pure question of law.") The PTAB's interpretation of a "covered business method" patent under Section 18 does not appear to be "so at odds with the statute as to present one of the extraordinary exceptions to the finality doctrine." *Id.* Indeed, under the doctrine set forth in *Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984),

an agency's interpretation of its own statute is likely to be given great deference by the courts. *See id.* at 844, 865–66, 104 S.Ct. 2778. Certainly in this case, the congressionally designated court for making those determinations—the United States Court of Appeals for the Federal Circuit—is the appropriate venue for this appeal. Plaintiff notes that the PTO's decision is now finalized, as a result of the Final Written Decision declaring the '350 patent invalid, thereby resulting in the "consummation" of the agency's decision-making process. Nonetheless, the decision presented to this Court for review is the decision to institute post-grant review. The final decision is not before the Court and its mere existence solidifies the conclusion that the decision to institute was not a final action. Furthermore, the occurrence of the PTO's final decision strongly supports that a direct appeal to the Federal Circuit in accordance with Section 329 is the proper venue for appealing the PTO's decisions and interpretations employed during the post-grant review.

Accordingly, the Court holds that the PTO decision to institute post-grant review is not a "final agency action" under Section 704 because it is not the consummation of the agency's decisionmaking process and did not result in the determination of legal rights or obligations from which legal consequences flow.

### 2. The Existence of Adequate Remedies

■ Adequate remedies exist for Plaintiff through direct appeal to the United States Court of Appeals for the Federal Circuit. As stated above, 35 U.S.C. § 329 provides that "[a] party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 328(a) may appeal the decision pursuant to sections 141 through 144. Any party to the post-grant review shall have the right to be a party to the appeal." *See also* 35 U.S.C. § 141(c) ("A party to ... a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board under section ... 328(a) ... may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit."). Congress expressly identified an adequate forum for providing Plaintiff a potential remedy. Section 704 "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts,* 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Congress's intent was to create a streamlined system while providing all parties with full access to judicial review. Accordingly, not only is the PTAB's decision to institute post-grant review not a "final agency action," adequate remedies also exist for Plaintiff to appeal the decision, namely an appeal to the Federal Circuit, at which time Versata may present arguments concerning the decision to initiate review and, if necessary, the prudence of reviewing this decision on an appeal from the substantive and final decision.

■ Versata argues that the Federal Circuit's willingness to hear Versata's jurisdictional arguments is merely speculative because this is a case of first impression. Thus, Versata argues, no certainty exists as to whether the Federal Circuit would even review the decision to initiate post-grant review or even the statutory interpretation applied when making that decision. However, Versata's unease regarding the potential scope or procedure of the Federal Circuit's review does not affect whether the process is adequate. "[A] judicial remedy is adequate for purposes of 5 U.S.C. § 704 even if it does not 'provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Pregis,* 700 F.3d at 1360 (quot-

ing *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C.Cir.2009)).

The Court is not persuaded that Plaintiff is being required to "bet the farm" by taking this appeal to the Federal Circuit as mandated by federal statute. Upon appeal of the PTO's determination, the Court of Appeals for the Federal Circuit shall receive "a certified list of the documents comprising the record in the Patent and Trademark Office." 35 U.S.C. § 143. The record would thus include Plaintiff's written and oral appeals to the PTAB regarding the PTAB's interpretation of "covered business method." In requiring the court to "review the decision from which an appeal is taken on the record before the [PTO]," nowhere is it indicated that the Federal Circuit will refuse to consider the entire administrative record. *See* 35 U.S.C. § 144.

Therefore, the Court grants Defendant's and Intervenors' Motions to Dismiss Versata's claims for failure to state a claim because the PTO decision to institute post-grant review is not a final agency action and an adequate remedy exists by way of direct appeal to the Federal Circuit.

## IV. CONCLUSION

For the foregoing reasons, the Court holds that Plaintiff's APA claims are barred from this Court's jurisdiction. The AIA expressly precludes judicial review of the Director's decision to institute post-grant review. Furthermore, the decision to initiate post-grant review, unlike the final decision upon the completion of the review, is not a final agency action for which Plaintiff lacks an adequate alternative remedy. Accordingly, it is hereby

**ORDERED** that Defendant's Motions to Dismiss for lack of subject matter jurisdiction and failure to state a claim (Docs. 16, 17) and Intervenors' Motion to Dismiss (Doc. 39) are GRANTED. Plaintiffs Complaint is hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED.**